**Armando MARTINEZ, Plaintiff,**

v.

**UNITED STATES SUGAR CORPORATION, a foreign corporation, Defendant.**

**No. 93–80–CIV–FTM–17D.**

United States District Court, M.D. Florida, Fort Myers Division.

March 16, 1995.

Joseph A. Vassallo, Joseph A. Vassallo, P.A., Isidro M. Garcia, Vassallo, Garcia & Garcia, P.A., Lake Worth, FL, for plaintiff.

Charles Robinson Fawsett, Linda Watson Dillman, Shutts & Bowen, Orlando, FL, for defendant.

## ORDER GRANTING MOTION FOR JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff's Motion to Supplement Exhibit # 39 (Docket 80) and Defendant's Motions for Rule 52(c) Judgment (Docket 90) and to Strike (Docket 92), as well as the various Responses and Replies to those Motions (Dockets 81, 82, 97, 99 and 101). The Motion for Judgment was filed at the conclusion of the Plaintiff's case-in-chief at trial.

### I. Standards

In considering a Rule 52(c) motion, the Court is the trier of fact. If the Court decides to grant a Rule 52(c) judgment on partial findings, it must weigh all the evidence presented and "... set forth ... findings of fact and conclusions of law ...". As the comment notes, this rule "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." Fed.R.Civ.Pro. 52(c) and advisory committee notes, 1991 amendment. The judge may sustain such a motion by Defendant even though a prima facie case may have been presented. *Cherrey v. Thompson Steel Co., Inc.* 805 F.Supp. 1257 (D.Md.1992), citing *Holmes v. Bevilacqua,* 794 F.2d 142 (4th Cir.1986) (referring to Rule 41(b), succeeded by Rule 52(c)).

### II. Facts

On Sunday, September 29, 1991, Plaintiff and other employees of Defendant were playing in a softball tournament sponsored by the Defendant. After a verbal dispute, including racial epithets between himself and Defendant employee Mr. William Jackson over the issue of playing time in that tournament, Plaintiff left the field of play, stating that he would be back. Transcript 6–40 through 50. Prior to his departure, he was briefly confronted by Mr. Bruce Ball, another employee of Defendant. Transcript 6–47. At this point, no real physical altercation had occurred, and the incident was limited mostly to name-calling, shouting and posturing.

Between ten (10) and thirty (30) minutes later, Plaintiff returned to the softball field, driving at what witnesses described as a high rate of speed, in an area where children were present. Transcript 6–51 through 52. In full control of his faculties, he brought with him a loaded .44 Magnum revolver and his expressed purpose of confronting Mr. Jackson. Transcript 6–148 through 152, 6–156 through 157, 7–61 through 68. Later dis-

armed, Plaintiff became involved in a physical altercation with Mr. Pat Hough and Mr. Toby Clements, also other employees of Defendant. Plaintiff suffered some minor injury from this incident. Transcript 6–158 through 160.

After investigation of the incident, all of the employees involved were subjected to some form of discipline for their participation. The decision to impose discipline was made by Defendant employees Mr. Larson, Mr. Starrett and Mr. Rodriguez. Transcript 4–142, 4–156, 3–57 through 60. Plaintiff Martinez was discharged from his work by Defendant, on October 16, 1991, and alleges violation of Title VII of the 1964 Civil Rights Act by his former employer, in that the discharge was because of Plaintiff's national origin, Cuban. The other employees involved in the incident received suspensions without pay for varying periods of time. Transcript 3–60 through 65. Plaintiff was later offered other work, at substantially lesser pay, by Defendant company, but declined. Transcript 6–105.

### III. Issues

#### A. Evidentiary questions

The record of this case is quite convoluted, in large part due to the apparent inability of both sides to organize the physical evidence in a cogent manner prior to start of trial. Not surprisingly, there are several proffers to be considered, a Motion to Supplement Defendant's Exhibit 39 (Docket 80), a Motion to Strike various parts of the record (Docket 92), and various Memorandums, Responses and Replies to those motions (Dockets 81, 82, 97, 99 and 101). For ease of organization, the various motions will be considered here in the order they were filed.

■ 1. MOTION TO SUPPLEMENT DEFENDANT'S EXHIBIT 39 (Docket 80)—Plaintiff moves that the Court allow Defendant's Exhibit # 39, already in evidence, to be supplemented by the actual recording from which that exhibit, a statement transcript, was drawn. Defendant objects to the supplementing of the transcript on the grounds that it is hearsay, that it is non-probative, and that Plaintiff had already rested his case (Docket 81).

The actual tape of a transcripted statement is neither more nor less hearsay than the transcript itself. Any probative value will be judged by the Court as trier of fact. Objection was made at trial on "all grounds," and overruled. Transcript, 7–9. Further, Defendant's counsel, in opening statement, invited the Court to play any of the tapes of interviews. Transcript 1–24. Having done so, it seems specious now that Defendant should move to exclude a tape from evidence.

■ As to the question of the admissibility of evidence after Plaintiff rested his case, the Court does not find that a consideration of original material in addition to a transcript to be a re-opening of Plaintiff's case. The Court controls the mode and order of presentation of evidence so as to make it effective for the ascertainment of truth. Fed.R.Evid. 611. Further, the Federal Rules of Evidence contain a clear preference for original contents of a writing or recording. Fed.R.Evid. 1002. There is no prejudice created by admitting the actual tape recording of a statement that has already been admitted. The Motion to Supplement Defendant's Exhibit 39 (Docket 80) is **granted.**

2. DEFENDANT'S MOTION TO STRIKE (Docket 92)—Defendant moves to strike eight (8) separate items from the trial testimony and other matters offered into evidence from the Plaintiff's case in chief. For the reasons noted below, each portion of the Defendant's Motion to Strike is **denied.**

■ a. Testimony of Rodney G. Larson, Transcript 1–74 through 78, on the grounds of hearsay and failure of Plaintiff to provide other evidence on point: This testimony did not constitute hearsay as it was not offered to prove the truth of the matter asserted, but, instead, to speak to the credibility of the witness. Plaintiff's Motion to Supplement Defendant's Exhibit # 39 constitutes provision of other evidence on the point concerning ethnic remarks upon tapes. The Motion to Strike this portion of the testimony is **denied.**

■ b. Defendant's Exhibit # 39, on the grounds of hearsay and failure of the Plaintiff to provide other evidence on point: The objection due to hearsay was overruled dur-

ing trial by the Court and again in this Order, above. The tape, admitted to supplement Defendant's Exhibit # 39 on Plaintiff's motion, is sufficient to meet the Plaintiff's promise to provide evidence on point not heard at trial. The Motion to Strike this portion of the evidence is **denied.**

■ c. Testimony of Dana Custer, Transcript 1–114 through 115, on the grounds that the material concerning reputation was not known to the Defendant, as represented by Plaintiff: This testimony was offered to establish the reputation for peacefulness of Mr. Pat Hough in the community. Whether it was known to the Defendant or not is a question of probative value, not of admissibility. Probative value will be determined by the Court as trier of fact. The Motion to Strike this portion of the testimony is **denied.**

■ d. Proffer of testimony of James David Bryant, Transcript 2–49 through 57, on the grounds of irrelevancy to a *prima facie* case: The Court has carefully reviewed this proffer. It contains a mixture of testimony, some of which is relevant, and some of which is borderline, at best. Even if admitted, however, the probative value of the material contained therein is so slight as to have very little bearing on the outcome of the Motion for Judgment. Accordingly, and to ensure any error is on the side of caution, the Motion to Strike this proffer is **denied.** Its weight, however small, will be considered with the totality of the evidence.

■ e. Testimony of Bert Starrett, Transcript 3–87 through 97, on grounds of irrelevance and departure from pleadings and issues presented in the Pretrial Stipulation: This testimony is clearly relevant to the issue of disparate impact. In moving to strike this evidence, Defendant is, in essence, asking the Court to refuse to consider that entire issue. The Court declines to do so, and will discuss disparate impact below. Motion to strike this portion of the testimony is **denied.**

f. Exhibits associated with testimony of Bert Starrett, on the grounds of irrelevance and departure from pleadings and issues presented in the Pretrial Stipulation: Motion to

Strike these exhibits is **denied** for the same reason as the above paragraph.

g. Testimony of Rodney Larson, Transcript 5–21 through 23, on the grounds of irrelevance and departure from the pleadings and issues presented in the Pretrial Stipulation: Motion to Strike this testimony is **denied** for the same reason as above.

## B. Timeliness of filing

■ Title VII requires a plaintiff to sue within ninety (90) days of receipt of a Notice of Right to Sue. 42 U.S.C. § 2000e–5(f)(1). Plaintiff has the burden to prove that he has adhered to the requirement. That 90 day period begins to run upon receipt of certified letter at *plaintiff's residence* [emphasis added]. *Norris v. Florida Department of Health and Rehabilitative Services,* 730 F.2d 682 (11th Cir.1984), see also *Law v. Hercules, Inc.,* 713 F.2d 691 (11th Cir.1983).

■ The Notice of Right to Sue was dated November 25, 1992, and this action was filed March 1, 1993, 95 days later. Plaintiff stated in trial testimony, contrary to the assertion in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for an Involuntary Dismissal, that he had received the notice, but he could not remember the date on which he received it. Transcript 6–112, 113. The date that Plaintiff's counsel received the notice is irrelevant under the 11th Circuit standard. Simply put, Plaintiff has not met his burden of proof.

On this ground alone, the Court can, and does, find ample reason to grant judgment for the Defendant. There are, however, further grounds for judgment, which the Court will discuss below.

## C. Prima facie case

There are significant differences in the legal analysis of disparate treatment cases and disparate impact cases, the most important of which is that for the latter, Plaintiff need not prove discriminatory intent on the part of the Defendant. In the pre-trial phase, Plaintiff based his case on disparate treatment. During the trial, Plaintiff attempted to develop a case based on disparate

impact. Plaintiff has not, however, constructed a *prima facie* case under either analysis.

■ **1. Disparate treatment:** The standard for building a *prima facie* case of disparate treatment has been made clear by what is called the *McDonnell Douglas/Burdine* standard. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Plaintiff must prove discriminatory intent with a preponderance of the evidence in order to prevail. If Plaintiff meets that burden, the employer may then articulate some legitimate, nondiscriminatory reason for its treatment of the employee. *McDonnell Douglas* at 801–3, 93 S.Ct. at 1824. Plaintiff then again has the burden to establish that the legitimate, non-discriminatory reasons expounded by the employer were not true reasons, but were mere pretext for discrimination. *Burdine,* 450 U.S. at 251–3, 101 S.Ct. at 1093, see also *Kirkpatrick v. Charter Hospital of Bradenton, Inc.,* 1991 U.S.Dist. LEXIS 9009; 56 Emp.Prac.Dec. (CCH) P40, 719, 1991 WL 115771. (M.D.Fla.1991).

■ The *McDonnell Douglas* line of cases established a four (4) part test framework for a Plaintiff to establish a *prima facie* case: 1) that he is a member of a protected class under Title VII; 2) that he was qualified for the job from which he was dismissed; 3) that the misconduct for which he was dismissed was nearly identical to the misconduct of employees outside the protected class who were retained, and; 4) that sufficient direct and/or circumstantial evidence exists to infer a nexus or causal connection between the protected classification and the disparate treatment. *Ibid,* 411 U.S. at 801–03, 93 S.Ct. at 1824; *McDonald v. Santa Fe Trail Transportation Company,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984); *McKeon v. Vaicaitis, Schorr, Richards, et al.,* 825 F.Supp. 290 (M.D.Fla.1993).

■ Here it is undisputed that Plaintiff meets the first two prongs of the test. He is a member of a protected class, and he is qualified for the job from which dismissed. Plaintiff fails, however, to meet either of the other two prongs of the test. His conduct was not "nearly identical to the misconduct of employees outside the protected class who were retained." Neither is there sufficient evidence, either direct or circumstantial, to "infer a nexus or causal connection between the protected classification and the disparate treatment." *McDonnell Douglas,* 411 U.S. at 801–3, 93 S.Ct. at 1824.

There was nothing particularly praiseworthy about the behavior of Defendant's other employees at the softball field incident which resulted in the firing of the Plaintiff. However, his behavior differed from the others involved in several critical aspects. First and foremost of these is that, having left the scene, Plaintiff had it within his power to avoid the incident entirely. In full control of his faculties, he deliberately chose not to do so. Instead he chose to return to the scene of an argument that, by his own admission, he knew could result in a physical confrontation. Transcript 7–65 through 68. Further, he returned to the softball field in a manner which, according to several observers, potentially endangered the safety of innocent bystanders by driving in a reckless manner. Transcript 2–80 through 81, 4–34, 4–107, 4–118.

Finally, Plaintiff came back to the softball field with a weapon capable of dealing deadly force, knowing that his potential opponent was also armed, with the clear purpose of inviting further confrontation. Transcript 6–154 through 156. He later led those investigating the incident for the Defendant to believe that he had deliberately retrieved the weapon from an inconvenient location in his home. Transcript 152 through 153. Although Mr. Jackson also had a deadly weapon, he did not, as Plaintiff did, seek out his adversary and endanger others in the process. Nor did Mr. Jackson leave the scene and return with the weapon. Plaintiff had it completely within his power to defuse the incident, and made a conscious, deliberate choice not to do so. There was no other participant in the incident whose behavior endangered innocent persons to the degree

that Plaintiff placed them at risk. There was no other participant who had as clear an opportunity to end the incident as the Plaintiff, yet still sought out an adversary.

The Court finds that Plaintiff's actions were not nearly identical to those of others, not in the protected class, who were not discharged. His actions were not even "substantially similar," as Plaintiff argues should be the standard, based on *Jones v. Gerwens,* 874 F.2d 1534 (11th Cir.1989), though the Court frankly finds little difference between "nearly identical" and "substantially similar." On that failure to meet that prong of *McDonnell Douglas/Burdine* test alone, the Motion for Judgement could be granted.

█ Nor is there sufficient evidence offered by Plaintiff to indicate that the fourth part of the test has been met, a factor which Plaintiff omitted from his Memorandum in Opposition to Defendant's Motion for Involuntary Dismissal. In that document, Plaintiff relies heavily upon the evidence contained in Defendant's Exhibit # 39 as supplemented. That exhibit may well be evidence that there were some persons employed by the Defendant who are willing to make or respond to a tasteless joke invoking racial stereotypes. That does not, however, constitute sufficient evidence to infer that the decision-makers of the Defendant corporation were influenced in any fashion by that stereotyping or the reaction to it.

Testimony elicited by Plaintiff has indicated that the persons who decided to discharge him were Mr. Starrett and Mr. Rodriquez, supervised by Mr. Mayo, both of the latter of Cuban origin themselves. It is difficult to believe that a person of Cuban origin would discriminate against another on that basis. None of these men were at the present at the time that Mr. Jones made the statement reflected on the tape in question. Further, there was no showing that these men were influenced in their decision by the tasteless ethnic material in the tape of Exhibit # 39. The mere fact that one incident of racial stereotyping by employees of a company occurred does not establish a causal connection between the stereotyping and a particular employment decision made by higher level officials in that company.

█ Finally, the testimony of Mr. Starrett and Mr. Larson articulated a legitimate, nondiscriminatory set of reasons for the Defendant to discharge Plaintiff from employment—that the Plaintiff had instigated the incident, escalated the level of violent behavior and endangered others. Absent any violation of a collective bargaining agreement or the Constitution, an employee may be discharged for any reason including misbehavior beyond work hours. Plaintiff has the burden of showing that such reasons were mere pretext, and there has been no such evidence presented. *Young v. General Foods Corp.,* 840 F.2d 825 (11th Cir.1988), see also *Carter v. City of Miami,* 870 F.2d 578 (11th Cir. 1989). Plaintiff, therefore, fails to meet the fourth prong of the applicable test. The evidence presented simply does not establish a nexus or causal connection between the protected class of persons and any alleged disparate treatment.

Having failed to meet two of the four (4) required factors, Plaintiff has failed to make a *prima facie* case for disparate treatment based on national origin. There has been no evidence presented in Plaintiff's case that would allow the Court to conclude or infer that his discharge was due to his national origin. On those grounds, Motion for Judgment could and should be granted.

**2. Disparate impact:** This issue was neither raised nor discussed in the pre-trial pleadings, not outlined as an issue in the pre-trial conference, pre-trial stipulations, nor was it subject to pre-trial discovery. The Court would prefer not to address this issue at this late date. It should have been addressed in the pre-trial phase by both parties, and it was not. It should have been subject to a formal motion to amend the pleadings to conform to the evidence, and it was not. Defendant objected during the trial phase to the introduction of this theory and supporting evidence on the grounds of unfair surprise. Were it not for a practice suggested by the Supreme Court in *Eastman Kodak v. Image Technical Services Inc., et al.,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), the Court would be strongly inclined

to sustain that objection and strike the evidence offered upon it.

In *Eastman Kodak*, the Supreme Court affirmed a reversal of a summary judgment decision by a Circuit Court, based in part on the sparsity of the record provided. This Court is now faced with a Motion for Judgment on Partial Findings, and not a Motion for Summary Judgment. The rules that apply to each are different, as are the standards for making such judgments. Given the clear procedural difference between the two types of judgment, the Court could still decline to consider the issue and rule only on the issue of disparate treatment.

Nonetheless, this Court has learned to be cautious in such situations. It is a waste of the parties' time and expense, as well as a waste of judicial resources, if the Court fails to consider an issue, however unsupported, that might constitute valid grounds for appeal. The practice of hearing such issues during the initial trial phase is much more economical for all concerned. Doing so may well avoid having the sparse record of trial that the Supreme Court complained of in *Eastman Kodak*. Accordingly, and solely for the purpose of erring on the side of caution if an error is to be made, the Court will use its discretion and consider the issue of disparate impact.

■ A disparate impact claim addresses employment practices such as testing or classification of employees which have adverse effects on a protected group, although the practices seem on the face to be neutral. Plaintiff relies first upon *Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), however that reliance is misplaced. Although those cases indicate that there is no need to prove discriminatory intent to make a *prima facie* case for disparate impact, they also indicate that such an impact must be felt by a group. As the Supreme Court clearly indicated in the latter, "Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed." *Griggs*, at 431, 91 S.Ct. at 853. The objective of Congress was to avoid situations where facially neutral

practices operated to "... 'freeze' the status quo of prior discriminatory practices." There has been no showing here of any prior discriminatory practices. There was no testing done, nor any classification that appeared facially neutral. Neither does one person make up a group.

■ *Teamsters* establishes another requirement to prove a case for disparate impact—that the Plaintiff must show that the company engaged in a "pattern or practice" of employment discrimination. *Ibid*, 431 U.S. at 334, 97 S.Ct. at 1854. To make a *prima facie* case, Plaintiff would have to "... establish by a preponderance of the evidence that racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Ibid*, at 336, 97 S.Ct. at 1855. Further, the Supreme Court cited legislative history to indicate that "The point is that single, insignificant, isolated acts of discrimination by a single business would not justify a finding of a pattern or practice ...". *Ibid*, footnote 16. Here, Plaintiff offers a single incident, and does not offer or establish racial discrimination as the company's standard operating procedure.

To establish a *prima facie* case in *Teamsters*, the Government provided extensive statistical evidence of discrimination against "A great majority of the Negroes and Spanish-surnamed Americans who did work for the company ...". *Ibid*, at 337–8, 97 S.Ct. at 1855–6. Here, there is no such statistical evidence, although the Supreme Court noted that "... our cases make it unmistakably clear that '[s]tatistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue." *Ibid*, at 339, 97 S.Ct. at 1856, citing *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974). A statistical pool of one incident is not a statistical pool at all. Neither was there here, as there was in *Teamsters*, testimony that recounted multiple acts of discrimination.

Plaintiff also seeks to rely upon *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988), in applying the use of disparate impact analysis to

subjective decisions made by an employer. However, that reliance, too, is misplaced. While holding that disparate impact analysis could be applied to situations involving subjective employment judgments, the Supreme Court also noted that, "... the plaintiff's burden in establishing a *prima facie* case goes beyond the need to show that there are statistical disparities in the employer's work force." *Ibid,* at 994, 108 S.Ct. at 2788. Additionally, the Supreme Court requires that, "Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group ... statistical disparities must be sufficiently substantial that they raise such an inference of causation." *Ibid,* at 994–5, 108 S.Ct. at 2789. In the instant case, there are no statistical disparities that would show, or even allow the inference of, such causation.

Further, the Supreme Court indicated that statistical evidence, where presented, could be challenged on various grounds, and commented that "... typical examples include small or incomplete data sets and inadequate statistical techniques." *Ibid,* at 996–7, 108 S.Ct. at 2790. In this case, only a small data set (six individuals who received discipline) is offered by Plaintiff, a clearly incomplete data set. Testimony indicated that there were other instances of employees being disciplined by Defendant company, yet there was no statistical analysis made of these offered by the Plaintiff. Transcript 7–22 through 25. Based on the insufficiency of evidence here detailed, Plaintiff has not constructed a *prima facie* case under disparate impact analysis.

Although Plaintiff correctly points out, through *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982), that disparate impact theory can be used to remedy individual claims, Plaintiff must have proven a *prima facie* case to achieve that remedy. Here, Plaintiff has not. There is nothing in that case that allows disparate impact analysis to be applied to the "single,

insignificant isolated acts" that the Supreme Court referred to in *Teamsters.* Accordingly, it is

**Ordered** that the Plaintiff's Motion to Supplement Exhibit # 39 (Docket 80) be **granted;** the Defendant's *Motion to Strike* (Docket 92) be **denied** in its entirety; and, because Plaintiff failed to file this suit in a timely fashion, and because Plaintiff has failed to make a *prima facie* case based on either of the legal theories offered, Defendant's Rule 52(c) Motion for Judgment (Docket 90) be **granted;** and the Clerk of the Court be **directed** to enter judgment for the Defendant, United States Sugar Corporation.

**DONE and ORDERED.**