Donald E. BULLOCK, Plaintiff,

v.

Sheila E. WIDNALL, Secretary of the Air Force, Department of the Air Force, Department of Defense, et al., Defendants.

Civil Action No. 95–D–1031–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 22, 1996.

Boyd F. Campbell, Patricia D. Warner, Montgomery, AL, for plaintiff.

Patricia A. Snyder, Leura J. Garrett, U.S. Attorney's Office, Montgomery, AL, Bernard E. Doyle, Air Force Legal Services, Arlington, VA, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendants' motion for summary judgment and supporting brief filed July 31, 1996. On September 4, 1996,

plaintiff, Donald E. Bullock, filed his response and brief in support of his response to defendants' motion for summary judgment, motion for judgment on the pleadings, and motion for injunctive relief. Defendants filed a reply thereto on September 9, 1996. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendants' motion is due to be granted in part and denied in part.

## JURISDICTION

Based upon 28 U.S.C. § 1331 [1] and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16,[2] the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## FINDINGS OF FACT

Plaintiff Donald Bullock ("Bullock") brings this discrimination action against defendants based upon race and retaliation for engaging in protected activities. Compl. ¶ 50. Bullock was employed with the United States Air Force as an electrical foreman for approximately ten years. Bullock Aff. ¶ 1. While working at Gunter Air Force Base, Bullock filed 19 complaints with the Maxwell Air Force Base Equal Employment Opportunity ("EEO") Complaints Office and one appeal with the Merit Systems Protection Board (MSPB). Defs.' Br. in Supp. of Mot. Sum.J. ("Defs.' Br.") ¶ 3. Alleging a pattern and practice of retaliation by the defendants, Bullock's judicial Complaint ("Complaint"), filed August 3, 1995, is based in large part on the 19 EEO complaints and MSPB appeal.

Specifically, however, he bases his Complaint on the charges of retaliation delineated in six of the 19 complaints and in the MSPB appeal.[3]

Defendants concede that plaintiff's claims based on EEO complaints, MGOK90018, MGOK92020, and MGOK93016, and the Merit Systems Protection Board appeal were timely filed, and, therefore, are not time-barred. Defs.' Br. ¶¶ 18, 32, 51; Pl.'s Br. at 10. The parties dispute, however, whether plaintiff's claims, as set out in MGOK93019, MGOK94020 and MGOK94021, are time-barred due to plaintiff's failure to file an appeal with the EEOC or a civil action within 90 days. See Defs.' Br. ¶ 38; Pl's Br. at 11. Because the parties appear to agree that the viable claims in the judicial Complaint concern only six of the EEO complaints and the MSPB appeal, this memorandum opinion will discuss only those complaints and appeal, as well as Bullock's first three EEO complaints, which comprise the protected conduct against which defendants allegedly retaliated. Although Bullock bases his cause of action on discrimination as well as retaliation, the six EEO complaints and the MSPB appeal relate only to claims of retaliation.

Bullock's first three EEO complaints, MGOK9007, MGOK90010, and MGOK90011, arose from an incident occurring on March 8, 1990, when his rating official, Senior Master Sergeant Kenneth Harrison lowered Bullock's performance ratings. Id. ¶ 4. Bullock, who is white, alleged that Harrison, who is black, had discriminated against him on the basis of race. Id. After Bullock filed his first EEO complaint concerning the discrimination, his supervisors, James E. Thompson

---

1. Section 1331 conveys to district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

2. Section 2000e–16 extends to public employees the same substantive rights and remedies that had been previously provided for employees in the private sector. *Douglas v. Hampton,* 512 F.2d 976 (D.C.Cir.1975).

3. Bullock also contends that defendants have engaged in a pattern and practice of discrimination in their treatment of him. *See* Pl.'s Br. at 10. A pattern and practice case, i.e., a disparate impact case, addresses "employment practices ...

which have adverse effects on a protected group, although the practices seem on the face to be neutral." *Martinez v. U.S. Sugar Corp.,* 880 F.Supp. 773, 780 (M.D.Fla.1995). The effect must be felt by a group. *Id.* To establish a prima facie case, Bullock would have to show "by a preponderance of the evidence that racial discrimination was the company's standard operating procedure—the regular rather than the unusual practice." *Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977). Bullock has failed to make such a showing, and, consequently, his pattern and practice claim must fail.

("Thompson") and Lieutenant Colonel Vernon Holmes ("Holmes"), issued a letter of reprimand which was later reduced to an oral admonishment. *Id.* ¶ 5. Additionally, Bullock was allegedly subjected to abuse of authority and abusive behavior by Holmes. *Id.* ¶ 6. The Air Force issued a final decision on these three complaints on January 27, 1992, finding that Bullock had established by a preponderance of the evidence that management had discriminated against him on the basis of race and that the two latter incidents were retaliatory in nature.[4] *Id.*, Ex. 4 at 7, 11, 13. As a result, the Air Force changed Bullock's March 1990 appraisal to give him the highest possible rating, removed all references to the letter of reprimand/oral admonishment from Bullock's records, and awarded Bullock attorney fees. *Id.*, Ex. 4. Bullock did not appeal the Final Agency Decision.

On November 4, 1991, a few months before the Air Force issued its Final Agency Decision regarding Bullock's first three complaints, Bullock filed his fourth EEO complaint, MGOK90018, based upon reprisal. Specifically, Bullock alleges that his supervisors, Holmes, Thompson and Robert Sharp ("Sharp"), had again retaliated against him for his race discrimination complaint by (1) not selecting him for supervisor training courses on June 12, 1991, (2) not selecting him for an Engineering Technician (GS–9) position on June 14, 1991, and (3) denying him a performance cash award on September 6, 1991. *Id.* ¶ 9, Ex. 5. The Air Force Review Board issued a final agency decision on Bullock's fourth EEO complaint on May 2, 1995, concluding that Bullock had failed to establish by a preponderance of evidence that the defendants' legitimate, nondiscriminatory reasons for their actions were pretextual. *Id.*, Ex. 7 at 2.

In his Complaint, Bullock first alleges that he was denied equal training courses, i.e.,

CESMARS,[5] as compared to other supervisors in his organization. Bullock Aff. ¶ 6; Defs.' Br. ¶ 10. Bullock contends that in retaliation for his previous EEO complaints against them, Holmes and Thompson improperly selected Staff Sergeant Eric Hogan ("Hogan"), the Non-commissioned Officer in Charge (NCOIC) of Bullock's section, to attend the CESMARS course. Defs.' Br. ¶ 10–11. The CESMARS course was meant to provide management skills relating to first-line and second-line supervision. Pl.'s Br. in Supp. of Pl.'s Resp. to Defs.' Mot for Sum.J. ("Pl.'s Br."), Ex. 4 at 3. Bullock, who was Hogan's first level supervisor, objected to Hogan's selection, contending that Hogan was not a supervisor and was not in charge of training in their shop. Pl.'s Br. at 2–3, Ex. 4 at 6.

Although Defendants concede that Hogan was the only CESMARS attendee who was not in charge of a section/shop, *see* Defs.' Br. ¶ 11, Ex. 7 at 17, they also state that he is considered "supervisory" in that he is the ranking military in the shop and is expected to take over Bullock's duties when Bullock is out. Defs.' Br., Ex. 7 (Sharp Aff. at 1, Thompson Aff. at 5). Moreover, Holmes states that he did not select the attendees, but instead that he "tasked" the selection to T. SGT. Casasanta, who was to obtain the names of the CESNARS nominees from the superintendents and Thompson. Defs.' Br., Ex. 7 at 35 (Holmes Aff.). Thompson also denies having anything to do with the selection process, stating that the "training monitors" made the selection. *Id.*, Ex. 7 at 6 (Thompson Aff.). Sharp, too, denies any knowledge of the CESMARS selection process. *Id.*, Ex. 7 at 16.

Bullock also alleges that he was passed over for a promotion to the position of Engineering Technician (GS–9) in retaliation for the EEO complaints he had previously filed. Bullock Aff. ¶ 7. Bullock applied for the

---

**4.** Discrimination based on race was found only in Bullock's first complaint, MGOK90007, and not in the second and third complaints, MGOK90010 and MGOK90011, respectively. Defs.' Br., Ex. 4.

**5.** Bullock originally alleged that he was not selected for three training courses: CESMARS,

ISD Applied to the Work Center, and Training the Trainer. Defs.' Br. ¶ 10. However, Bullock only addresses the CESMARS course in his affidavit and in his brief in opposition to defendants' motion for summary judgment. Consequently, the court will confine its discussion of the training courses to the CESMARS course only.

position, but Thompson awarded it to Kenneth Latham ("Latham") because he felt that Latham's experience was "wider, more commercial, more in-depth, [and for a] longer length of time." Thompson Dep. at 31. Bullock, however, contends that he was more qualified for the job than Latham and that he had informed Holmes and Thompson about Latham's falsification of his resume some six months before the promotion decision was made.[6] Pl.'s Br. at 3.

Bullock also claims that although he was eligible to receive a cash award for his superior performance rating during the period of July 1, 1990, through June 31, 1991, he was denied the award as a means of retaliation. Defs.' Br., ¶ 14. The defendants, however, contend that Bullock was not eligible for a cash award because he had received a promotion during that same time period; Performance Recognition Committee policy does not permit employees who are promoted to a higher grade during the rating period to receive a cash award. *Id.*, Ex. 7 (Monk Aff.). There were apparently six other individuals who also had "superior" performance ratings, and, yet, did not receive a cash award. Pl.'s Br., Ex. 6 at 1; *see also,* Defs.' Br., Ex. 7 (Goins Aff., Sharp Aff., Holmes Aff.). In response, Bullock argues that *"none* of the employees who received a 'superior' performance rating and did not receive a cash award were rated as high as plaintiff"[7] and that the "policy" affected only one him. Pl.'s Br. at 3. Bullock also argues that because Holmes and Thompson fought his promotion,[8] that it is "implausible" to suggest that *"but for* [his] promotion he would have received a cash award." *Id.* at 4.

On March 23, 1992, Bullock filed his fifth EEO complaint, MGOK92020, wherein he again alleged retaliation for his prior EEO activities. Defs.' Br., Ex. 6. In this complaint, he alleged that Thompson and Sharp conspired to abuse their power and to harass him. *Id.* This complaint resulted from Thompson and Sharp inviting Hogan to lunch on February 4, 1992. *Id.* ¶ 16. Bullock contends that Thompson and Sharp invited Hogan to lunch in order to question him about Bullock's EEO activities and work activities so that they could use the information against him. Bullock Aff. ¶ 9. Bullock further contends that he did not know Hogan's whereabouts, which compromised the scheduled work, and that Sharp later reprimanded him for not knowing where Hogan had been. *Id.*

Defendants acknowledge that Thompson and Sharp went to lunch with Hogan. Defs.' Br. ¶ 17. Hogan testified that Thompson invited him to lunch and instructed him not to worry about notifying Bullock as to his whereabouts. Defs.' Br., Ex. 7 (Hogan Aff. at 3). Additionally, Hogan testified that he was asked one question regarding Bullock's EEO case. *Id.* (Hogan Aff. at 4). Sharp testified that he did not recall discussing Bullock's EEO case at lunch that day, and while Sharp admits talking to Bullock regarding the lunch incident, he characterizes it as agreeing with Bullock that they should have let Bullock know where Hogan was. *Id.* (Sharp Aff. at 3–4). Similarly, Thompson testified that he did not recall discussing Bullock's EEO case at lunch that day, and he denies singling out Bullock with regard to knowing the whereabouts of employees. *Id.* (Thompson Aff. at 5–6).

On September 28, 1992, Bullock filed his ninth EEO complaint, MGOK93016, again alleging retaliation for engaging in protected activity. Defs.' Br., Ex. 13 at 1. Bullock alleged that defendants had retaliated against him by not referring him for the position of Maintenance Mechanic Supervisor, WS–4794–12, on July 19, 1993.[9] *Id.*

---

**6.** Although Bullock makes the claim in his brief that he alerted Thompson and Holmes regarding Latham's "false" records at least six months prior to Latham's selection, Bullock does not direct the court to his affidavit or any other evidence that would lend a modicum of support for such a contention.

**7.** To support this claim, Bullock only offers his own performance evaluation into evidence and no others.

**8.** Again, the court notes that Bullock offers no admissible evidence that Thompson or Holmes fought Bullock's promotion.

**9.** Bullock also contended that the defendants retaliated against him by inaccurately coding his

This complaint arose from a reorganization of the Maxwell/Gunter civil engineering squadron into a zone concept. Defs.' Br., Ex. 13 at 2. As a result of the reorganization, a zone manager position became available in Zone 3, at the Gunter Annex; Thompson, the selecting official, filled the position with someone other than Bullock. *Id.*

Bullock contends that he was already performing the responsibilities of the Maintenance Mechanic Supervisor when management reduced his job duties as an act of reprisal. Bullock Aff. ¶ 22. Bullock contends, in essence, that Thompson knew Bullock's computer skill code, and by working with personnel, Thompson was able to secure a skill code for the position that would exclude Bullock from the pool of candidates.[10] Pl.'s Br. at 4. Thompson denies that he established the skill code for the position. Defs. Br., Ex. 13 (Thompson Aff. at 2). Thompson admits however that he had access to Bullock's skill code until December 1992. *Id.* Additionally, Essie Williams, a staffing specialist, and Madriece Welch, chief of the classification section, both testified that the skill code for the open position was selected based on the belief that it would provide the best qualified candidates and was not an attempt on their part to exclude Bullock from the candidate pool. *Id.* (Williams Aff., Welch Aff.). On July 5, 1995, the Air Force issued a final agency decision finding that Bullock had failed to establish a prima facie case of retaliation. *Id.*, Ex. 13.

Bullock filed his tenth EEO complaint, MGOK93019, on November 4, 1993, again alleging retaliation for participation in protected activities. Defs.' Ex. 14. Specifically, he alleged that he was wrongfully denied an award for a superior performance rating on September 10, 1993, and also that management had failed to preserve Bullock's rights during the EEO process by not taking appro-

priate action after determining that discrimination had been committed against him. *Id.*

First, Bullock contends that for the third year in a row he was denied an award (either cash or time off) for a superior performance appraisal. Bullock Aff. ¶ 24. Additionally, Bullock complains of disparate treatment in that an electrical foreman at Maxwell Air Force Base, who shared Bullock's supervisor, received a lower rating than Bullock but received a cash award "along with others." *Id.* However, Bullock fails to direct the court to any evidence regarding the comparitor.

Second, Bullock contends that management failed to preserve and protect his rights upon a finding of discrimination on January 27, 1992, based on Bullock's first three EEO complaints. Defs.' Br. ¶ 33, Ex. 15. Although Bullock's second contention is extremely vague, it appears that Bullock is claiming that the denial of a cash award for the third year in a row is a result of management's failure to protect him from retaliatory actions. *Id.* It is unclear from Bullock's affidavit what, if any, support he has for this claim.

On March 9, 1994, the Department of Defense Office of Complaints Investigation issued notification that the investigation of Complaint MGOK93019 had been completed. Defs' Br. ¶ 34, Ex. 15 at 1. On April 5, 1994, Bullock requested an immediate final decision on the record. Rejecting the investigator's findings of retaliation,[11] the Air Force issued a final agency decision finding no retaliation on July 22, 1994. *Id.* Bullock did not appeal the final agency decision nor did he file his judicial complaint within 90 days of the final agency decision. *Id.* ¶ 34. Instead, Bullock contends that because the agency issued its final decision late, he had no obligation to appeal or file a judicial complaint and that the investigator's findings and re-

---

work experience into his computerized employment history and denying him an opportunity to update his work history on July 26, 1993. However, in his brief, Bullock neither cites to his affidavit nor any other admissible evidence which would support these two claims.

**10.** To support this claim, Bullock offers a typed list of skill codes for various positions. *See* Pl.'s Br., Ex. 7. Not only is the list not titled or

authenticated, but it also does not show that Thompson knew Bullock's skill code.

**11.** The Air Force found that the investigator had improperly substituted his judgment for that of management when he considered only one factor—the numerical factor ratings—in evaluating award decisions. Defs.' Br., Ex. 15 at 7.

port should constitute the Air Force's final decision in case MGOK93019. Pl.'s Br. at 12.

Bullock brought two other EEO complaints, MGOK94020 and MGOK94021, against defendants, which he contends were improperly dismissed. Pl.'s Br. at 4–5. Both these complaints were dismissed by the Air Force in final agency decisions, on August 10, 1994, and August 8, 1994, respectively, on the grounds that Bullock had failed to raise the necessary allegations in precomplaint counseling as required by 29 C.F.R. § 1614.107(b). Defs.' Br. ¶¶ 48, 49, Exs. 30, 31. It appears that Bullock did not appeal the final agency decisions to the Equal Employment Opportunity Commission ("EEOC") but instead filed his judicial Complaint with this court on August 3, 1995.

■ Finally, Bullock contends defendants retaliated against him by terminating his employment on February 23, 1995. Defs.' Br. ¶ 51. Bullock was terminated from his position of Electrical Supervisor for failure to follow proper leave procedures and for being absent without leave.[12] See Pl.'s Ex. 9, Order Summarizing Telephonic Prehearing Conference 6/1/95. Bullock subsequently appealed his termination to the MSPB.[13] Defs.' Br., Ex. 35. On July 14, 1995, the administrative judge for the MSPB found that the Air Force had improperly denied Bullock's request for sick leave, so she mitigated Bullock's discipline to a three day suspension. Defs.' Br., Ex. 36 (Initial Decision at 13). The administrative judge also found, however, that Bullock "produced no evidence whatsoever that the agency removed him because of his filing of [EEO] complaints." *Id.* (Initial Decision at 12).[14]

Defendants move for summary judgment as to all of Bullock's claims. Bullock moves for judgment on the pleadings and requests the following injunctive relief: (1) reinstatement to his position with the Air Force; (2) promotion of one grade to WS–12; and (3) promotion to the position of Maintenance Supervisor. Additionally, Bullock requests the court protect him from reprisal by any and all employees of the Air Force after his reinstatement.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether

12. Referring only to "management" in his complaint and affidavit, Bullock does not specify which defendants terminated him.

13. "In some cases, federal employees affected by particular adverse employment actions may instead assert their related Title VII claims in connection with an appeal to the MSPB, an independent, quasi-judicial federal administrative agency established to review civil service decisions." *McAdams v. Reno*, 64 F.3d 1137, 1140 (8th Cir. 1995); *see also*, 5 U.S.C. § 7701.

14. Bullock contends that the administrative judge instructed the parties to produce testimony concerning "medical evidence, which went directly to the question of retaliation." Pl.'s Br. at 5. Not only is the court unable to find such a directive in the record, but also Bullock does not make it clear what relevance such a directive might have in his retaliation claim before this court.

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

### I. Plaintiff's Timely Retaliation Claims

■ Federal employees, prior to instituting a court action under Title VII, must first exhaust their administrative remedies before the agency charged with employment discrimination. *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Manning v. Carlin*, 786 F.2d 1108 (11th Cir.1986). In order to exhaust administrative remedies, a complainant must comply with the timing provisions as described in the EEOC's Regulations on Federal Sector Equal Employment Opportunity, 29 C.F.R. Part 1614. These provisions are a condition to Title VII's waiver of sovereign immunity and must be strictly construed. *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990).

■ Therefore, before analyzing Bullock's claims of retaliation, the court must make a determination as to which of Bullock's EEO claims are timely filed with the court, and therefore, within the court's jurisdiction, and which of his claims are time-barred.[15] Defendants concede that Bullock's claims, as delineated in EEO complaints MGOK90018, MGOK92020, and MGOK93016, were timely filed. The parties dispute, however, whether EEO complaints MGOK93019, MGOK94020, and MGOK94021 were timely filed and

---

**15.** Bullock suggests in his brief that he has been the victim of a pattern and practice of retaliation since 1990, and, therefore his claims are timely because they remained unabated until the termination of his employment on February 27, 1995. *See* Pl.'s Br. at 9–10. Defendants state that this pattern and practice claim is an attempt by Bullock to establish a continuing violation. *See* Defs.' Reply Br. at 2.

The court rejects any such continuing violation claim. *Roberts v. Gadsden Memorial Hosp.*, 850 F.2d 1549, 1550–51 (11th Cir.1988), stands for the proposition that even where a discriminatory act continues into a statutory filing period, a claim is time-barred where the employee was aware of his rights when the incident occurred and thus could have asserted them at that time. Here there is no question that Bullock understood the EEOC procedure and was aware of his rights. He did, after all, file a complaint, 19 in all, and one appeal after each incident he considered to be discriminatory or retaliatory. Consequently, any claim for which he failed to follow the proper procedure, either by failing to appeal to the EEOC or to file a claim in district court in a timely fashion, must be consider time-barred and the court may not exercise jurisdiction over it.

whether Bullock waived his right to pursue a retaliation claim in his MSPB appeal.

## A. EEO Complaint MGOK90019

On March 9, 1994, the Department of Defense Office of Complaints Investigation issued notification that its investigation of complaint MGOK93019 [16] was completed. On April 5, 1994, Bullock requested an immediate final decision on the record. Pursuant to 29 C.F.R. § 1614.110, "within 60 days of receiving notification that a complainant has requested an immediate decision from the agency ... the agency shall issue a final decision." In this instance, the Air Force did not issue its final agency decision until July 22, 1994, some 45 days overdue. Bullock took no further action on complaint MGOK93019 until he filed his judicial Complaint on August 3, 1995.

Defendants argue that Bullock has failed to comply with 29 C.F.R. § 1614.408(a), which requires a complainant to file a civil action "within 90 days of receipt of the final decision ... if no appeal has been filed," and, therefore, that his claim is time-barred. Bullock acknowledges that he did not appeal the final agency decision or file his civil action within 90 days, but he argues that because the Air Force failed to issue the final agency decision within 60 days of his request for an immediate final decision, the late decision constitutes a "non-decision" and he should not be bound by the decision or the applicable filing deadlines. Specifically, Bullock contends that the non-decision effectually breached the Air Force's obligation to give him notice of his rights to appeal, pursuant to 29 C.F.R. § 1614.110, which requires a final agency decision to contain a notice of appeal. Bullock argues that because the Air Force breached its duty, his judicial Complaint with regard to MGOK93019 is not untimely, or, in the alternative, that the investigator's findings (which the Air Force rejected and which

were favorable to Bullock) should be considered the final agency decision.

The court finds Bullock's arguments unpersuasive. As the defendants point out in their brief, the EEOC's Regulations on Federal Sector Equal Employment Opportunity, 29 C.F.R. Part 1614, do not render a final agency decision invalid when it is issued outside the applicable time limit. Instead, the regulations provide other mechanisms with which a complainant may protect his rights. For instance, if an agency does not issue a final agency decision within 180 days of the filing of the formal EEO complaint, the complainant has the option of enforcing his rights by filing suit in the appropriate United States District Court. 29 C.F.R. § 1614.408(b). The court finds that in the instant case, because Part 1614 of the Code of Federal Regulations does not provide otherwise, Bullock should have filed his civil action within 90 days of receiving the agency's final decision.

Bullock's argument that he was not notified of his right to appeal or his right to file a civil action because the final decision was a "non-decision" is disingenuous at best. The final agency decision contained the standard notice regarding filing appeals and civil actions; Bullock was made aware of his options in that final agency decision. *See* Defs.' Br., Ex. 15 at 11–13. Bullock was not relieved of his responsibility for pursuing his complaint simply because the agency had sent him its final decision in an untimely manner.[17]

The court is also unpersuaded by Bullock's somewhat original argument that because the agency had, in effect, issued a "non-decision," then the investigator's original findings (which supported Bullock's claims of retaliation) should stand as the agency's final decision. Again, the court notes there is no provision in 29 C.F.R. § 1614 for such a result,[18] and, therefore declines to institute such a provision.

---

**16.** In this complaint, Bullock claimed that he had been denied a cash award after receiving a superior appraisal rating and that management had failed to preserve his rights.

**17.** The court notes also that EEO complaint MGOK93019 was the tenth complaint Bullock

had filed. Clearly, he was aware of his rights and obligations in pursuing his EEO claims.

**18.** Section 1614.109(g) does provide that an EEOC administrative judge's recommended findings and conclusions shall become the final decision unless the agency rejects or modifies them

Accordingly, the court finds as a matter of law that Bullock failed to exhaust his administrative remedies and that his claims based on EEO complaint MGOK93019 are timed-barred.

## B. EEO Complaints MGOK94020 and MGOK94021

On August 10, 1994, and August 8, 1994, the Air Force issued final agency decisions dismissing MGOK94020 and MGOK94021, respectively, on the grounds that Bullock had failed to raise the necessary allegations in precomplaint counseling as required by 29 C.F.R. § 1614.107(b). In the dismissal, see Defs.' Br., Exs. 30, 33, Bullock was notified of his right to appeal the dismissal to the EEOC within 30 calendar days of receiving the decision or to file a civil action in federal district court within 90 calendars of receiving the decision. See 29 C.F.R. §§ 1614.401(a) and 1614.402(a).

■ Bullock did not appeal the dismissal and, instead, filed the instant action on August 3, 1995. Clearly this is not within the applicable time limit of 90 days. Accordingly, the court finds as a matter of law that Bullock failed to exhaust his administrative remedies and that his claims based on EEO complaints MGOK94020 and MGOK94021 are time-barred.

## C. MSPB Appeal

■ The parties agree that Bullock timely filed his appeal to the MSPB regarding his termination on February 23, 1995. However, defendants argue that Bullock's retaliation claim based on his termination should be dismissed because Bullock waived this issue during his MSPB hearing. When a plaintiff elects to file an appeal before the MSPB, all issues, including EEO complaints, are transferred to the MSPB proceeding, and having chosen this option, the plaintiff is required to

exhaust his claims in that forum before filing a civil action. *McAdams v. Reno*, 64 F.3d 1137, 1141 (8th Cir.1995). If the plaintiff fails to present those claims during the MSPB proceeding, then the federal district court in a later civil action does not have jurisdiction over those claims. *Id.*

Defendants contend that Bullock failed to present any evidence of retaliation at the MSPB proceeding, and, therefore, that issue has been waived. Bullock, however, argues that there was no requirement that the plaintiff present evidence because the administrative judge "told the parties that she wanted to hear testimony concerning medical evidence, which went directly to the question of retaliation." Pl.'s Br. at 5. It appears to the court that Bullock is arguing that he met his evidentiary burden in his retaliation claim by presenting medical evidence during the MSPB proceeding, and, therefore, that he did not waive his retaliation claim.

■ After reviewing the administrative judge's two orders summarizing telephonic prehearing conferences, Pl.'s Br., Ex. 9, and the administrative judge's initial decision, Defs.' Br., Ex. 36, the court concludes that Bullock did not waive his retaliation claim. The administrative judge noted in her prehearing summaries that Bullock had raised the affirmative defense of retaliation. She also noted in her initial decision that Bullock had made a claim of retaliation but had failed to produce any evidence "whatsoever" to support it. Although Bullock may have ineptly presented his claim of retaliation during the MSPB proceeding, such presentation does not compel the conclusion that he waived the claim.[19]

## II. Retaliation Claims

■ Title VII protects employees engaging in statutorily protected activities, such as filing a charge with the EEOC,

within 60 days of receipt. 29 C.F.R. § 1614.109(g). There appears, however, to be no similar provision for the recommended findings of the agency's own investigator.

**19.** The facts in *McAdams* can be distinguished from those in the instant case. 64 F.3d 1137. In *McAdams*, the claimant apparently failed to bring forward any of her EEOC charges except for

retaliation. The court concluded that she had waived all EEOC charges except her retaliation claim, which was the only claim she brought before the MSPB proceeding. In the instant case, however, Bullock did not fail to make the claim, but rather failed to present evidence of the claim.

against retaliation by an employer. 42 U.S.C. 2000e–3(a). Proof of retaliation is controlled by the framework set forth in *McDonnell Douglas* and *Burdine*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

 Accordingly, Bullock must first meet his burden of establishing a prima facie case of retaliation. In order to meet this burden, he must show "(1) that he has engaged in statutorily protected activity; (2) that the employer has taken an adverse employment action; and (3) a causal connection exists between the two." *Meeks v. Computer Associates Int'l*, 15 F.3d 1013, 1021 (11th Cir.1994); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600–601 (11th Cir.1986), *citing Canino v. United States Equal Employment Opportunity Commission*, 707 F.2d 468, 471 (11th Cir.1983). To recover for retaliation, Bullock need not prove the underlying claim of discrimination which led to his protest, but he must have had a reasonable belief that the discrimination existed. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir.1989). Here, for Bullock to establish the causal connection between the protected activity and the adverse employment action, Bullock must demonstrate that the filing of a charge with the EEOC "was a 'but for' cause of the adverse employment decision. . . . If the employee does not bear that burden of persuasion, he or she may not prevail." *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir.1985).

 Once Bullock has established a prima facie case, the burden then shifts to the defendants, who must produce evidence that the employment decision was motivated by legitimate, non-discriminatory reasons. *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817. If the defendants meet this burden, the presumption created by Bullock's prima facie case drops out of the litigation, and Bullock bears the ultimate burden of persuasion that defendants' proffered legitimate, non-discriminatory reasons are a mere pre-

text for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**A. Complaint MGOK90018: Supervisor Training, Promotion and Performance Award**

 Bullock had filed two EEO complaints against Holmes and Thompson on July 12, 1990 and August 17, 1990. He alleges that as a consequence of his engaging in the protected activity of filing the complaints, Holmes, Thompson and Sharp retaliated against him by denying him supervisor training on June 12, 1991, a promotion to engineering technician on June 14, 1991, and a performance cash award on September 6, 1991. There is no question that Bullock was engaged in protected opposition to Title VII discrimination. There is some dispute, however, as to whether Bullock suffered an adverse employment decision and whether he has met his burden of showing defendants' proffered reasons for the employment decisions are a pretext for retaliation. The court finds that defendants' motion for summary judgment on Bullock's claims described in EEO complaint MGOK90018 is due to be granted.

▪ The court finds Bullock has failed to show that his non-selection for the CESMARS training course was an adverse employment action. Although Bullock may very well have benefitted from attending CESMARS and it may have been insulting to have his subordinate chosen to attend, he has not demonstrated that his non-selection adversely affected the terms or conditions of his employment. *See Wu v. Thomas*, 996 F.2d 271, 274 (11th Cir.1993) (stating that all hostile acts are not wrongful). For instance, he has not shown that not attending the CESMARS training course would affect his salary, chances of promotion, ability to perform his job, etc. Consequently, the court is unable to conclude that the denial of training was an adverse employment action and finds that Bullock has failed to establish a prima facie case with regard to CESMARS course.[20]

---

**20.** The court notes that Bullock has also failed to establish a link between his filing of the com-

█ The defendants concede, however, that Bullock does establish a prima facie case of retaliation with regard to the GS–9 Engineering Technician position. Bullock applied for and was interviewed by Thompson for the GS–9 position, but Thompson selected Latham instead of Bullock. Defendants offer a legitimate, non-discriminatory reason for the hiring decision, saying that Latham's experience was wider, more commercial, and more in-depth than Bullock's.

█ To demonstrate defendants' proffered reason is merely a pretext for their retaliatory motive, Bullock contends that Latham's resume was fraudulent and that Thompson was aware of this at the time he made the decision. Such evidence would be sufficient to create a question of fact as to pretext; however, Bullock fails to present (1) any admissible evidence that Thompson was aware of Latham's deficiencies and (2) any admissible evidence that Latham's resume was fraudulent or inflated.[21] Accordingly, the court finds that Bullock has not met his burden in showing pretext.

█ Bullock's final charge in EEO complaint MGOK90018 is that he was denied a cash award customarily given to employees who received a superior rating on their performance appraisal. Once again, defendants acknowledge that Bullock has presented a prima facie case of retaliation. In response to Bullock's charge, defendants point out that Bullock had received a promotion during that particular rating period and it is the policy of the Performance Recognition Committee that any employee promoted to a higher grade during the rating period is not eligible for a cash award. Bullock attempts to show this policy is pretextual in that it only affected

him and that his supervisors fought vigorously against his promotion. Although these contentions might ordinarily be enough to create a question of fact with regard to pretext, Bullock has failed to support these contentions with any sort of evidence and has failed to meet his burden in showing pretext.

## B. Complaint MGOK92020: Taking Subordinate to Lunch

Bullock alleges that in an attempt to retaliate against him for previous EEO filings, Thompson and Sharp took Bullock's subordinate, Hogan, to lunch on February 4, 1992, where they questioned him about Bullock's EEO case. Bullock further alleges that Thompson and Sharp used the opportunity to remove Hogan from his post without telling Bullock and then later reprimanded Bullock for not knowing the whereabouts of Hogan. Defendants contend Bullock has failed to establish a prima facie case in that the lunch did not constitute an adverse employment action and, additionally, that he has failed to create a material issue of fact concerning the lunch incident. The court finds that defendants' motion for summary judgment on this claim is due to be denied.

█ Bullock has presented a prima facie case of retaliation. Clearly, Bullock had engaged in protected conduct, when he made claims against Thompson and Holmes. Moreover, Bullock claims the terms and conditions of his employment were adversely affected because Hogan's absence "compromised the work schedule" and because Sharp threatened to reprimand Bullock for not knowing where Hogan was at the time of the lunch.[22] Sharp denies reprimanding or

---

plaints and his "non-selection." Bullock has failed to create a material issue of fact with regard to whether Holmes, Thompson, and Sharp selected Hogan or issued instructions that Bullock not be selected.

**21.** Bullock presents letters from Latham's former employers describing what Latham's responsibilities were and why he left. However, the court is unable to consider the letters because they are not authenticated or certified, and, therefore, they are inadmissible under Rules 801, 802 and 901 of the *Federal Rules of Evidence*.

**22.** In their brief, defendants accuse Bullock of lying about the threatened reprimand, saying that Sharp's alleged threat of a reprimand is new information and inconsistent with a previous affidavit. Defs.' Reply Br. at 9–10.

The Eleventh Circuit has made it clear that a party cannot avoid summary judgment on the basis of a "sham" affidavit. *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir.1984). The job of the District Court is to distinguish "discrepancies [between two affidavits] which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tip-*

threatening to reprimand Bullock. The court finds that the disruption of Bullock's work or production schedule combined with the verbal criticism is sufficient to create a genuine issue of material fact with regard to adverse employment action.

Additionally, the proximity in time between the agency's final decision on Bullock's first three claims is sufficient to establish a causal link between the protected activity and the threatened reprimand. *See Donnellon*, 794 F.2d 598 (prima facie case established where discharge occurred one month after filing charge). Only ten days before Thompson and Sharp invited Hogan to lunch, the Air Force issued a final agency decision in Bullock's favor and against Thompson and Holmes.

■ In response to Bullock's prima facie case, defendants claim there was nothing "premeditated" about inviting Hogan to lunch and that they do not remember discussing Bullock at lunch. Hogan, however, has testified that he was asked one question about Bullock's EEO case. Sharp denies threatening Bullock. The court finds that Bullock has been able to create a question of material fact as to whether defendants' explanation is a pretext for retaliation.

### C. Complaint MGOK93016: Promotion

■ Bullock alleges he was denied a promotion to Maintenance Mechanic Supervisor because Thompson, who knew Bullock's skill level code, was able to determine the job skill level, thereby excluding Bullock from the candidate pool. The court finds, however, that Bullock has failed to establish a prima facie claim of retaliation.

■ Assuming *arguendo* that Bullock was qualified for the promotion but left out of the candidate pool, the court finds that he

suffered an adverse employment action. He has failed, however, to show any causal link between that act and his involvement in protected activities. Bullock has demonstrated that Thompson at one time knew Bullock's skill code, but he has not presented any evidence that Thompson manipulated the code selection in any fashion. Nor has he presented any evidence that the staffing specialists selecting the code and compiling the candidate pool manipulated the code selection in any fashion. Accordingly, the court finds that defendants' motion for summary judgment on Bullock's claim that he was wrongfully denied a promotion to maintenance mechanic supervisor is due to be granted.

### D. MSPB Appeal: Wrongful Termination

Lastly, Bullock maintains that defendants, as a final act of retaliation, wrongfully terminated his employment. Bullock provides few details regarding his termination, saying only that he was wrongfully terminated. *See* Bullock Aff. ¶ 39. The court finds that Bullock has failed to bring forth any evidence whatsoever of retaliation and, therefore, has failed to present a prima facie case of retaliation. Accordingly, defendants' motion for summary judgment on Bullock's claim of wrongful termination is due to be granted.

### CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that defendants' motion for summary judgment be and the same is hereby GRANTED in part and DENIED in part.

It is further CONSIDERED and ORDERED that plaintiff's motion for judgment on the pleadings be DENIED.

---

*pens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986). The *Tippens* Court went on to state "[a]n affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 954 (quoting *Van T. Junkins*, 736 F.2d at 657). Only those affidavit

statements which are "inherently inconsistent" with earlier deposition testimony should be stricken. *See W.C. Lane v. Celotex Corp.*, 782 F.2d 1526, 1531 (11th Cir.1986); *see also, Moore v. Beneficial Nat'l Bank U.S.A.*, 876 F.Supp. 1247, 1253–54 (M.D.Ala.1995). The court finds that Bullock's previous testimony that Sharp refused to discuss taking Hogan to lunch is not *inherently inconsistent with his later testimony* that Sharp threatened a reprimand due to Hogan's absence.

It is further CONSIDERED and OR-DERED that plaintiff's motion for injunctive relief be consolidated with the trial of the merits of this action.