Cleveland G. ATKINSON, Plaintiff,

v.

WILEY SANDERS TRUCK LINES, INC., Defendant.

No. Civ.A. 98–D–207–N.

United States District Court, M.D. Alabama, Northern Division.

Dec. 18, 1998.

James H. Wettermark, Birmingham, AL, Jerry W. Brimberry, Albany, GA, for plaintiff.

Jeffrey E. Friedman, Birmingham, AL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court are Defendant's Motion for Summary Judgment and Memorandum of Law in Support of Motion ("Def.'s Br."), filed on October 13, 1998. On November 2, 1998, Plaintiff filed a Response to Defendant's Motion for Summary Judgment and a Memorandum of Law in Support of Response ("Pl.'s Br."). On November 10, 1998, Defendant filed a Reply to Plaintiff's Response and accompanying Memorandum of Law. On December 14, 1998, Plaintiff filed a Notice of Recent Decision in support of its Motion for Summary Judgment. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion for Summary Judgment is due to be granted.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343(a)(4) (civil rights), 42 U.S.C. § 12101, et seq. (Americans with Disabilities Act of 1990 ("ADA")), and 42 U.S.C. § 1981, et seq. (Civil Rights Act of 1991). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial on the legal issues, as to which the facts in question pertain. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the steps a trial court should follow when considering a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND[1]

Plaintiff was employed as a truck driver by Defendant trucking company from approximately October 5, 1996 until February 7, 1997, when Plaintiff resigned, claiming that he was constructively discharged. (Pl.'s Aff. at 1–2.) The primary dispute in this action revolves around a spouse rider program, mentioned in Defendant's advertisement for truck drivers, that allows the spouses of qualified employees to ride along with them on truck hauling trips. (Pl.'s Aff. at 1; Pl.'s Dep. at 51; Pl.'s Compl., Ex. A.) Plaintiff responded to Defendant's advertisement and contends that he informed Defendant at that time that he planned to participate in the spouse rider program. (Pl.'s Aff. at 1.)

On or about December 11, 1996, Plaintiff informed Defendant that he wanted to take the necessary steps so that his spouse could ride with him pursuant to the spouse rider program. (*Id.*) Defendant told Plaintiff to work through the safety department to obtain approval for his wife to ride along. (*Id.*) On December 13, 1996, Plaintiff spoke with Defendant's safety director and informed him that his wife has diabetes and would need to perform peritoneal dialysis on herself with a portable dialysis machine while out on the road with Plaintiff. (*Id.*) Defendant's safety director asked Plaintiff about any limitations and/or restrictions of his wife in connection with the dialysis machine and whether they would prevent Plaintiff from completing his normal duties as a truck driver. (*Id.*) The safety director requested that Plaintiff obtain a release letter from his wife's treating physician, stating that it was safe for her to travel on trucking hauls with Plaintiff and that she was unrestricted in her activity. (*Id.*) Plaintiff informed the safety director that his wife was under no restrictions and that he would obtain the requested physician's letter. (*Id.*)

Plaintiff contends that the safety director telephoned Plaintiff later that same day and informed him that Defendant's insurance department said that Plaintiff's wife would never be permitted to ride under the spouse rider program because of her diabetes. (*Id.* at 2.) Plaintiff contends that Defendant rendered its decision prior to receiving a letter from his wife's physician. (Pl.'s Dep. at 48, 70; Pl.'s Br. at 5.) Plaintiff ultimately obtained such letter, dated January 21, 1997, in which his wife's physician stated that she had no restrictions. (Pl.'s Compl., Ex. B.)

In his deposition, Plaintiff related that he was angry with Defendant's denial of his participation in the spouse rider program, stating that "I kept on working and working, but the more I thought about it, the madder I got. I said, 'This ain't right.'" (Pl.'s Dep. at 71). On February 7, 1997, Plaintiff resigned, claiming that he was constructively discharged. (Pl.'s Aff. at 2.)

On June 6, 1997, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Def.'s Br., Ex. 5.) On December 3, 1997, the EEOC issued Plaintiff a Notice of Right to Sue. (Def.'s Br., Ex. 3.) On February 26, 1998, Plaintiff filed this lawsuit against Defendant, claiming violation of Title I of the ADA and Title I of the Civil Rights Act of 1991. (Pl.'s Compl.)

## DISCUSSION

Defendant filed the instant Motion for Summary Judgment, claiming, *inter alia*, that Plaintiff's claim is not covered by the ADA because Defendant never denied Plaintiff the benefit of participation in the spouse rider program. Defendant denies that it constructively discharged Plaintiff from employment and denies that it engaged in unlawful employment discrimination in violation of the ADA.[2]

*Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992).

2. Another of Defendant's arguments is that Plaintiff fails to demonstrate that his wife

In response, Plaintiff contends that Defendant violated the ADA because of Defendant's refusal to allow Plaintiff's wife to participate in the spouse rider program due to her diabetes. Plaintiff further contends that Defendant constructively discharged Plaintiff.

In 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The general rule against discrimination in employment relationships, as embodied by Title I of the ADA, states:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The word "discriminate" as used in 42 U.S.C. § 12112(a), has been defined broadly to include more than just discrimination on the basis of a personal disability. It also means "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the *known disability of an individual with whom the qualified individual is known to have a relationship or association.*" 42 U.S.C. § 12112(b)(4) (1994) (emphasis added). "A family relationship is the paradigmatic example of a relationship under the association provision of the ADA." *Hartog v. Wasatch Academy,* 129 F.3d 1076, 1082 (10th Cir. 1997); *see also* 29 C.F.R. § 1630.8 (1996). Accordingly, Plaintiff bases his ADA claim on the association discrimination provision of the ADA, arguing that Defendant discriminated against Plaintiff by prohibiting his wife from riding along with Plaintiff on truck hauls, pursuant to the spouse rider program, because she suffers from diabetes.

 In order to determine whether Plaintiff has presented evidence sufficient to permit a jury to find that he was discriminated against because his wife has diabetes, the court must first address whether Plaintiff establishes a prima facie case of association discrimination under ADA § 102(b)(4), 42 U.S.C. § 12112(b)(4).[3] The prima facie case for association discrimination includes the following four elements:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
>
> (2) the plaintiff was subjected to adverse employment action;
>
> (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability; and
>
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Hartog,* 129 F.3d at 1085.[4]

suffers from a disability as defined under the ADA because his wife is not substantially limited in one or more of her major life activities because of her diabetes. The court, however, does not reach this issue because of Plaintiff's inability to demonstrate an adverse employment action under the ADA.

**3.** The court notes that association discrimination under the ADA has only just begun to be addressed by district courts in the Eleventh Circuit. *See Hilburn v. Murata Elec. N. Am., Inc.,* 17 F.Supp.2d 1377, 1383 (N.D.Ga.1998) (analysis of elements of prima facie case of association discrimination as set forth in *Hartog,* 129 F.3d at 1085); *Walthall v. Fulton County School District,* 18 F.Supp.2d 1378,

1385–86 (N.D.Ga.1998) (same). The Tenth Circuit, in *Hartog v. Wasatch Academy,* 129 F.3d at 1081–84, however, engages in a thorough discussion of the legislative intent behind the association discrimination provision of the ADA, describing certain intended applications and unintended misapplications of the provision. Because the Parties to the instant action do not dispute the applicability of the association provision to their case, this court will not further address the various parameters of the provision.

**4.** In his Complaint, Plaintiff loosely refers to Defendant's failure to make "reasonable accommodations" to Plaintiff so that Plaintiff's

■ In the instant case, Defendant argues, and the court agrees, that Plaintiff has failed to demonstrate a prima facie case of association discrimination. The court finds that Plaintiff has failed to prove the second element of its prima facie case, that Plaintiff suffered an adverse employment action as defined under the ADA.[5]

To meet its burden in the present context, Defendant claims that it neither denied Plaintiff a job benefit nor constructively discharged Plaintiff. Defendant claims that, even if it denied Plaintiff permission to participate in the spouse rider program, such action does not amount to an adverse employment action. The court agrees and finds that Plaintiff has not suffered an adverse employment action.

Construing the facts in the light most favorable to Plaintiff, the court accepts as true that Defendant affirmatively denied Plaintiff's request to participate in the spouse rider program. Thus, the issue for the court is whether Defendant's denial of Plaintiff's request to participate in the spouse rider program constitutes an adverse employment action. The court finds that such denial does not constitute an adverse employment action under the ADA.

Plaintiff argues that he was denied the fringe benefit of participating in the spouse rider program, participation in which was one of the "terms, conditions, and privileges of employment" protected from discrimination by the ADA. *See* 29 C.F.R. § 1630.4(f) (regulation preventing discrimination under the ADA in regard to "fringe benefits available by virtue of employment, whether or not administered by the covered entity"). However, the court finds that the type of fringe benefits which the ADA intended to protect from discrimination are privileges such as health and life insurance benefits, retirement funds, profit-sharing, paid holidays and vacations, and sick leave. *See* 29 C.F.R. app. § 1630.8.[6] Accordingly, Plaintiff's reliance

---

wife could ride along with him on truck hauls, despite her suffering from diabetes. The court finds, however, that Plaintiff's expectation of some form of accommodation by Defendant is misplaced because, "[b]y the plain terms of [42 U.S.C.] § 12112(b)(5), however, the ADA does not require an employer to make any 'reasonable accommodation' to the disabilities of relatives or associates of an employee who is not himself disabled." *Hartog*, 129 F.3d at 1084. The plain language of Title I of the ADA requires that only job applicants or employees, but not their relatives or associates, need be reasonably accommodated. *Id.; see also* 29 C.F.R. app. § 1630.8 (stating that "an employer need not provide the applicant or employee without a disability with a reasonable accommodation because that duty only applies to qualified applicants or employees with disabilities").

5. The *McDonnell Douglas* burden shifting framework applies to claims of association discrimination brought under ADA § 102(b)(4), 42 U.S.C. § 12112(b)(4) (1994). *See Hartog*, 129 F.3d at 1085; *see also Doe v. Dekalb County School District*, 145 F.3d 1441 (11th Cir.1998) (applying *McDonnell Douglas* burden shifting framework in an ADA case). Accordingly, if a plaintiff in an association discrimination action establishes the four elements of a prima facie case, then the burden shifts to defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once such a reason is proffered, the burden shifts back to plaintiff to demonstrate that the employer's legitimate, nondiscriminatory reason is pretextual. *Id.* at 804, 93 S.Ct. 1817. In the instant case, however, Plaintiff fails to establish a prima facie case of association discrimination. Therefore, the court finds that the burden never shifts back to Defendant and declines to address Defendant's argument that it had a legitimate, nondiscriminatory reason for denying Plaintiff's wife's participation in the spouse rider program.

6. The appendix to § 1630.8 speaks about the protection of "other benefits and privileges of employment" in the context of association discrimination, citing the following example:

> [A]n employer that provides *health insurance benefits* to its employees for their dependents may not reduce the level of those benefits to an employee simply because that employee has a dependent with a disability [ ] even if the provision of such benefits would result in increased health insurance costs for the employer.

29 C.F.R. app. § 1630.8 (emphasis added).

on *Gonzales v. Garner Food Servs., Inc.*, as supporting the proposition that participation in the spouse rider program is a fringe benefit as envisioned by the ADA, is misplaced because in that case, the issue concerned an employer-imposed limitation on plaintiff's health benefits coverage due to his disability. 89 F.3d 1523, 1526 (11th Cir.1996). In the instant case, Plaintiff offers no other support for the proposition that participation in the spouse rider program is a fringe benefit, like health benefits, to be protected from discrimination under the ADA. Therefore, the court finds that the spouse rider program is not the type of fringe benefit included under the "terms, conditions, and privileges of employment" component of the ADA anti-discrimination definition.

Not only does the court find that Plaintiff is unable to demonstrate that participation in the spouse rider program is a fringe benefit, but also the court finds that Plaintiff is unable to demonstrate that the denial of participation amounts to an adverse employment action. The court must apply an objective, "reasonable person" test to determine whether an employment action is adverse. *See Doe v. Dekalb County*, 145 F.3d at 1448–49. This test requires that "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Id.* To be adverse, the employment action must affect a term or condition of employment, *see Perryman v. West*, 949 F.Supp. 815, 819 (M.D.Ala.1996), such as termination of employment, demotion, salary decrease, or loss of benefits. *See Wu v. Thomas*, 996 F.2d 271, 273 (11th Cir.1993); *see also Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir.1996). "A term or condition of employment may be said to have been affected if there is a 'demonstrable adverse impact on future employment opportunities or performances.'" *Merriweather v. Alabama Dep't of Public Safety*, 17 F.Supp.2d 1260, 1274 (M.D.Ala.1998) (quoting *Fortner v. State of Kansas*, 934 F.Supp. 1252, 1266 (D.Kan.1996), *aff'd, Fortner v. Rueger*, 122 F.3d 40 (10th Cir.1997)). Just because an individual dislikes or disagrees with an employment action does not make it adverse. *See Perryman*, 949 F.Supp. at 819.

In *Bullock v. Widnall*, this court considered whether non-selection for a training course constitutes adverse employment action. 953 F.Supp. 1461, 1473 (M.D.Ala. 1996) (DeMent, J.), *aff'd*, 149 F.3d 1196 (11th Cir.1998). In finding that Plaintiff Bullock had failed to show that his non-selection for a particular training course was an adverse employment action, this court stated:

> Although [Plaintiff] Bullock may very well have benefitted from attending [the training course] [ ] and it may have been insulting to have his subordinate chosen to attend, he has not demonstrated that his non-selection adversely affected the terms or conditions of his employment. For instance, he has not shown that not attending the [ ] training course would affect his salary, chances of promotion, ability to perform his job, etc. Consequently, the court is unable to conclude that the denial of training was an adverse employment action and finds that Bullock has failed to establish a prima facie case with regard to [the training] [ ] course.

*Id.* (citations omitted); *see also Merriweather*, 17 F.Supp.2d at 1271 (also finding that non-selection for training courses did not constitute or result in any adverse employment action); *Crumpton v. St. Vincent's Hosp.*, 963 F.Supp. 1104, 1121 (N.D.Ala.1997) (finding that heightened criticism and pressure exerted by an employer does not constitute adverse employment action absent a showing that such criticism lead to an eventual termination or other final adverse employment decision). In applying the *Bullock* and *Merriweather* analyses to the present case, the court finds that Plaintiff has not carried his burden of demonstrating that Defendant's denial of Plaintiff's participation in the spouse rider program affected or could affect his salary, chances of promotion, ability to perform his job, or resulted or

could result in any other final adverse employment action.

 Plaintiff alternatively argues that he was constructively discharged by Defendant as a result of Defendant's denial of Plaintiff's participation in the spouse rider program. It is this constructive discharge, claims Plaintiff, that constitutes the adverse employment action which he must demonstrate as part of his prima facie case of association discrimination.

Constructive discharge constitutes an adverse employment action under the ADA. *See Poole v. Country Club of Columbus, Inc.,* 129 F.3d 551, 553 n. 2 (11th Cir.1997) (citing *Maddow v. Procter & Gamble,* 107 F.3d 846, 852 (11th Cir.1997)). "To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were 'so intolerable that a reasonable person in her position would have been compelled to resign.'" *Id.* at 553 (citing *Thomas v. Dillard Dep't Stores, Inc.,* 116 F.3d 1432, 1433–34 (11th Cir.1997)); *see also Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1317 (11th Cir.1989) (employing reasonable person standard to determine whether plaintiff should have felt compelled to resign); *Henson v. City of Dundee,* 682 F.2d 897, 907 (11th Cir.1982) (defining constructive discharge in a Title VII action as a situation where "an employee involuntarily resigns in order to escape intolerable and illegal employment requirements").

In the instant case, the court finds that Plaintiff fails to demonstrate that Defendant's actions created an intolerable work situation that would compel a reasonable person to resign or that Defendant's actions affected Plaintiff's employment status, salary, chances of promotion, ability to perform his job, or any other pertinent aspect of his employment. In fact, the court notes that Plaintiff stated in his deposition that the reason he resigned was because he was angry about Defendant's decision and thought it was wrong. (Pl.'s Dep. at 71). Yet, in defense of this motion, Plaintiff never asserts any reasons relating to the impact on the overall terms and conditions of his employment. Therefore, the court finds that Defendant did not constructively discharge Plaintiff.

Based on the foregoing, the court finds that Plaintiff does not meet his burden of establishing a prima facie case of association discrimination because he fails to demonstrate that he had been subjected to an adverse employment action under the ADA. Accordingly, the court finds that Defendant's Motion for Summary Judgment is due to be granted.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's Motion for Summary Judgment be and the same is hereby GRANTED and that this case be and the same is hereby DISMISSED.