**Henrietta L. MERRIWEATHER,**
**Plaintiff,**

v.

**ALABAMA DEPARTMENT OF PUBLIC SAFETY; L.N. Hagan, in his official capacity as Director of the Department of Public Safety, Defendants.**

Civil Action No. 97–A–991–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 14, 1998.

Alvin T. Prestwood, Montgomery, AL, for Plaintiff.

William G. McKnight, Jack M. Curtis, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This matter comes before the court on Defendants, Alabama Department of Public Safety's and L.N. Hagan's, Motion for Summary Judgment filed on June 18, 1998.

Plaintiff, Henrietta Merriweather, filed her Complaint in this case on June 26, 1997 in the United States District Court for the Middle District of Alabama. On February 12, 1998, Plaintiff filed an Amended Complaint. Plaintiff alleges that Defendants violated her rights to be free from racial discrimination in the workplace and asserts various claims arising under Title VII of the Civil Rights Act of 1964, as amended in 1991, (42 U.S.C. § 2000e et seq.), and 42 U.S.C. §§ 1981[1] and 1983, as well as claims arising under Alabama state law. Therefore, this court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over the claims arising under federal statute and the United States Constitution and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the claims arising under state law.

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*

---

1. Merriweather has conceded that Count IV, her only § 1981 claim, is ripe for dismissal. *See* Plaintiff's Brief at p. 6 n. 5. This court therefore will not address the merits of Merriweather's § 1981 claim.

*v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). For the reasons stated herein, Defendant's Motion for Summary Judgment is due to be GRANTED.

## III. *FACTS*

The evidence submitted by the parties establishes the following undisputed facts:

Plaintiff, Henrietta Merriweather, a black female, has been employed by Defendant Department of Public Safety ("DPS") since 1989 in Tuscaloosa County as a Drivers License Examiner I. In March of 1996, Margaret Watson, a white female also employed as a Drivers License Examiner I, was "semi-officially" named as "acting supervisor," or Drivers License Examiner II [2], and given additional job duties.[3] At the same time, law enforcement officer, Trooper Terry, a black male, was also named as an acting supervisor. Merriweather contends that Watson had the opportunity to attend ongoing training courses which enabled her to advance, while Merriweather was not afforded such opportunities.

Merriweather also asserts claims based on the unequal application of work rules. While Defendants have a policy requiring all employees absent for medical reasons to submit written doctor's excuses, Merriweather asserts that white employees were not required to comply with that rule.

In March of 1995, Merriweather testified on behalf of Sara Smelley, a co-worker, during the litigation of Smelley's disability discrimination claim against DPS. Merriweather Dep. at p. 155, ll. 5–13. Merriweather also claims that she made several of her own complaints concerning what she perceived to be the discriminatory promotion of Watson in March of 1996. Merriweather Dep. at p. 182, ll. 2–14; p. 190, ll. 15–17. Subsequent to Smelley's trial in March of 1995 and Merriweather's lodging of her own complaints in March of 1996, Merriweather claims that the

---

**2.** The terminology regarding Watson's designation is not clear. Merriweather Dep. at pp. 173–79. The court's understanding is that Driver's License Examiner II and "acting supervisor" are coextensive. Whether the terms are synonymous in fact, however, is irrelevant. Merriweather uses the terms interchangeably to refer to Watson's promotion in March of 1996 regardless of what the job title was. Merriweather Dep. at p. 178, ll. 22–23—p. 179, l. 9.

**3.** Merriweather's claim is based upon Watson's promotion to acting supervisor rather than Watson's official promotion to Drivers License Examiner II. Watson was not officially promoted until November of 1997, approximately 5 months after Merriweather filed this lawsuit. Merriweather acknowledges that the claim is not based upon Watson's official promotion. Merriweather Dep. at pp. 179–80.

Defendants were angry with her and retaliated against her by giving her poor performance evaluations. *Id.* For example, Merriweather states that she received a negative job evaluation in July of 1996. Merriweather Dep. at p. 188, ll. 10–15. Merriweather stated that she refused to sign the evaluation because she believed the evaluation was unwarranted. Merriweather asserts that she was punished for refusing to sign the evaluation by being escorted to Montgomery.

## IV. *DISCUSSION*

A plaintiff bringing a claim under Title VII must establish that the employer's actions were the result of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Where, as in this case, a plaintiff seeks to prove a claim by use of circumstantial evidence of the employer's intent, a framework of shifting burdens of proof applies. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

First, the plaintiff must establish a prima facie case of discrimination. *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* This is a burden of production, not persuasion. *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089. If the employer provides a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817. To avoid summary judgment, the "evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation." *Howard v. BP Oil Co.,* 32 F.3d 520, 525 (11th Cir. 1994).

### A. Disparate Treatment and Equal Protection Claims (Counts I and V)

■ Merriweather contends that the Department of Public Safety took employment

action against her on the basis of race. Merriweather brought claims against the Department of Public Safety and its Director, L.N. Hagan, in his official capacity, for race discrimination under 42 U.S.C. § 2000e ("Title VII") and 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the United States Constitution. Both claims, premised on the same facts, require evidence of intentional discrimination on the basis of race. Consequently, the framework traditionally applied to claims of intentional discrimination under Title VII (the *McDonnell Douglas–Burdine* framework set out above) also applies to Merriweather's § 1983 claim for violation of the Equal Protection Clause. *See Lee v. Conecuh County Bd. of Educ.,* 634 F.2d 959 (5th Cir.1981).[4]

■ Merriweather claims that she was treated in a racially discriminatory manner regarding several incidents in the course of her employment at DPS. *See* Plaintiff's Brief at pp. 6–7. In order to establish a prima facie case of racial disparate treatment, a plaintiff must prove: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) the defendant treated similarly situated, non-minority employees more favorably, and (4) she was qualified for the position. *Jones v. Carraway Medical Ctr.,* 137 F.3d 1306, 1310 (11th Cir.1998), *superseded in non-relevant part on denial of reh'g,* 151 F.3d 1321 (11th Cir.1998). The court examines each of these incidents separately below.

#### 1. *Failure to promote*

■ Merriweather asserts that in March of 1996, she was denied a promotion to the position of "acting Driver License Examiner II" when the position was filled by a white employee with less experience, training, ability, and seniority. In order to establish a prima facie case in the hiring or promotion context, Merriweather must produce evidence that (1) she is a member of a protected group, (2) she applied for and was qualified for the job; (3) her application was rejected; and (4) the position was filled by a person outside the protected class who was only

---

**4.** The Eleventh Circuit adopted as binding precedent all former Fifth Circuit cases decided prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

equally or less qualified. *Arrington v. Cobb County,* 139 F.3d 865, 873 (11th Cir.1998).

DPS contends that Merriweather has failed to satisfy the fourth requirement of a failure to promote claim because two other, more qualified employees, Examiner Margaret Watson, a white female, and Trooper Terry, a black male, were promoted to the position.[5] *See* Yates Aff. at p. 2. These temporary appointments, which occurred only when the supervisor was absent from the office, were based upon the supervisor's evaluation of employees' performance of their duties and the need to have a dependable person in charge in the supervisor's absence. *Id.* Watson was chosen over Merriweather in part because Merriweather had been away from work on sick leave during the months preceding the appointment. *Id.* Merriweather admits that the appointments about which she complains were based on the supervisor's evaluation of employees' "grading and performance." Merriweather Dep. at pp. 95–96, ll. 4–23.

As further evidence of Watson's superior qualifications, DPS offers completed "inquiry sheets" on which all Drivers License Examiner I's in the Tuscaloosa office were asked to initial all of the functions of the Drivers License Examiner II job requirements which they felt competent to handle. Watson initialed twenty-two out of the twenty-three job duties, whereas Merriweather initialed only six out of the twenty-three. *See* Creighton Aff. at pp. 1–2 and Attach. at pp. 1–2.

Plaintiff Merriweather has produced no evidence to support her allegations that Watson was equally or less qualified than Merriweather for the temporary appointment to the position of acting supervisor. On the contrary, on examination of the evidence in the light most favorable to the plaintiff, Watson appears to have been the more qualified employee, even according to Plaintiff Merriweather's own self-evaluation. The court

therefore finds that Merriweather has failed to satisfy the fourth element of her prima facie case of discrimination based upon failure to promote, that Watson was only equally or less qualified than Merriweather for the position.

This court notes that in April of 1996, supervisor Creighton changed the acting supervisor system to implement a rotation system for appointments to this position in his absence. *See id.* at p. 2 and Attach. at p. 4. Under this system, Merriweather served as acting supervisor four times between April 24, 1996 and October 1, 1996. *Id.* This system was adopted to address complaints of favoritism and to ensure that all Examiner I's gained some experience in the Examiner II position. *Id.* Apparently, Merriweather's complaint is that Watson served as an occasional, temporary acting supervisor during the supervisor's absence between sometime in March of 1996 and April 24, 1996. Merriweather has pointed to no authority, nor has this court found any, to suggest that such an occasional, temporary assignment is cognizable under a failure to promote theory.

### 2. *Medical excuses*

■ Merriweather asserts that while Defendants have a policy requiring all employees absent for medical reasons to submit written doctor's excuses, white employees were not required to comply with that rule.[6] As Defendants note, Merriweather testified that she was required to turn in doctor's excuses on three different occasions: (1) after an automobile accident in 1992 when she was placed on light duty, (2) during the last two to three years when she was in the hospital and her supervisor wanted to know when she would be back to work, and (3) again at an unknown time when Examiner Tidmore asked her to get a doctor's certificate. Merriweather Dep. at pp. 140–48.

---

**5.** Merriweather does not, nor could she, contend that Trooper Terry, a black male, was a person outside the protected class (race) for the purposes of her racial harassment claims. Thus, the court limits the discussion to the evaluation of whether Examiner Margaret Watson was only equally or less qualified than Examiner Merriweather for the position of acting supervisor or Drivers License Examiner II in March of 1996.

**6.** While Defendant DPS contends that Plaintiff Merriweather's allegations that she was required to submit written doctors' excuses were not included as a charge in her E.E.O.C. complaints, the court finds that the claimed discriminatory treatment claim is reasonably related to the allegations of disparate treatment contained in her E.E.O.C. charge. *See Turner v. Orr,* 804 F.2d 1223, 1226 (11th Cir.1986). Therefore, the court will address the merits of this allegation.

Defendants offer a procedural defense, based upon the statute of limitations, to the medical excuses allegations. Ordinarily, a Title VII plaintiff must file a charge with the E.E.O.C. within 180 days of the allegedly discriminatory act. 42 U.S.C. § 2000e–5(e); *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 904, 109 ·S.Ct. 2261, 104 L.Ed.2d 961 (1989). In this case, Merriweather filed her E.E.O.C. charge on September 6, 1996. Therefore, DPS argues that Merriweather is precluded from stating a prima facie case of discrimination based on any alleged incidents which occurred more than 180 days prior to that date. There are exceptions, however, to the general rule.

Merriweather apparently argues that this claim is not time-barred on the grounds that it amounts to a continuing violation of Title VII—an exception to the strict application of the 180 day prerequisite. Continuing violation theory permits plaintiffs to base discrimination claims on certain types of conduct occurring prior to the statute of limitations period for Title VII if the conduct was part of a continuing pattern of discrimination. *See Roberts v. Gadsden Memorial Hospital,* 850 F.2d 1549 (11th Cir.1988). Merriweather appears to contend that the continuing violation exception applies to continuing discriminatory enforcement of a· facially neutral workplace rule in that black employees are consistently required to provide doctor's excuses for their absences whereas white employees are not required to provide such excuses. The court, however, does not need to determine whether Merriweather's disparate treatment claim as to the doctor's excuse policy can be characterized as a continuing violation.

For purposes of this Motion, the court will assume that Merriweather has satisfied the E.E.O.C. filing prerequisite. Even assuming that Merriweather satisfied such requirements, summary judgment is due to be granted under substantive Title VII analysis on the ground that Merriweather has not proven a prima facie case of racially disparate treatment regarding the enforcement of the doctor's excuse work rule.

The establishment of Merriweather's prima facie case turns upon whether she can establish that similarly situated non-minority employees received more favorable treatment from DPS, a burden which DPS alleges she cannot carry. The court finds a Florida district court case persuasive. In *Pugh ·v. Heinrich,* the court addressed a plaintiff's claim of disparate treatment regarding provision of doctor's statements. 695 F.Supp. 533, 542 (M.D.Fla.1988), *aff'd.,* 933 F.2d 1020 (11th Cir.1991). In *Pugh,* the plaintiff alleged that she had been instructed to bring in a doctor's statement if absent before or after scheduled days off, while Caucasian employees who were absent on the same days did not have to provide such statements. *Id.* at 537. During the relevant period, seventeen out of the plaintiff's thirty-three reported absence days were in conjunction with scheduled days off or holidays. *Id.* at 542. The court found that the plaintiff had presented no competent evidence that any other employee was similarly situated, with a record of taking days off, particularly sick days, just before or after a day off or ·a holiday. *Id.* The court found that the plaintiff's unsubstantiated conclusions that other employees did the same thing were insufficient to establish that similarly situated white employees were treated differently and thus held that the plaintiff had failed to establish a prima facie case. *Id.*

In the present case, Merriweather has similarly presented no competent evidence that any other similarly situated employee was treated differently. Merriweather named Examiner Elliot, a white female, as her only example of another employee who was not required to provide a doctor's excuse for her medical absence. Merriweather Dep. at pp. 151–52. Despite Merriweather's allegation that Examiner Elliot was similarly situated, this statement amounts to nothing but an unsubstantiated conclusion. Merriweather produced no evidence that Examiner Elliott (or any other person) was similarly situated—that is, had been placed on light duty or had been hospitalized with no known date of return to work and required to provide a doctor's excuse. In addition, Merriweather has not even stated the circumstances surrounding the third instance for which she alleges she was required to provide a doctor's excuse. Since she, like the plaintiff in *Pugh,* carries the burden of showing that the defendant treated similarly situated, non-minority employees more favorably, her unsubstanti-

ated conclusion that she was required to obtain doctor's excuses while white employees were not is not enough to establish that similarly situated non-minority employees received more favorable treatment from DPS regarding the enforcement of the doctor's excuse rule. Merriweather therefore fails to establish a prima facie case of disparate treatment based on the doctor's excuse rule.

### 3. *April 1996 Job Evaluation*

■ Merriweather claims that in April of 1996, after refusing to sign [7] a job evaluation with which she did not agree,[8] she was escorted to Montgomery and asked to sign the evaluation, whereas no other employees had been punished for similar conduct.

The court finds again that Merriweather fails to establish a prima facie case because the third element, that the defendant treated similarly situated, non-minority employees more favorably, has not been shown. If the plaintiff fails to identify similarly situated, non-minority employees who were treated more favorably, her case must fail. *Jones v. Bessemer Carraway Medical Ctr.*, 137 F.3d 1306, 1311 (11th Cir.1998). In the present case, Merriweather has not even alleged that any other employee had ever refused to sign an evaluation form. In the absence of such evidence, the court fails to see how DPS' action in requiring her to travel to Montgomery with her supervisors and to sign her evaluation could be motivated by racial animus. Thus, Merriweather fails to state a prima facie case for racially disparate treatment for the events which followed April 1996 evaluation.

■ Even assuming that Merriweather had stated a claim for racially disparate treatment based on these events, Defendants have provided a legitimate business reason for their actions in requiring Merriweather to travel to Montgomery with her supervisors. Defendants state that Captain Howell, who reviews all driver license employee evaluation forms, asked Merriweather and her supervisors to travel to Montgomery in order to find out whether there was a problem with Merriweather's evaluation, and if so, to resolve it. *See* Howell Aff. at p. 2. As Defendants note, Merriweather makes no attempt to show that Defendants' proffered business reason for such action was pretext for discrimination. In the absence of any evidence to support that Defendants' actions were discriminatory, Merriweather's racially disparate treatment claim, insofar as it is based upon the April 1996 evaluation events, cannot survive Defendants' Motion for Summary Judgment.

### 3. *Training classes*

■ Merriweather asserts that she was not given the opportunity to attend special training classes or to receive similar on-the-job training opportunities while other employees were given such opportunities to enhance and improve job skills and performance. Specifically, Merriweather complains that she was not given an opportunity to attend four classes: (1) voter registration, (2) stress management, (3) interstate waiver for Commercial Drivers Licenses ("CDL"), and (4) CDL computer program. Merriweather Dep. at pp. 230–38.

In *Bullock v. Widnall* a court in this district analyzed whether non-selection for a training course constitutes adverse employment action. 953 F.Supp. 1461, 1473 (M.D.Ala.1996), *aff'd*, 149 F.3d 1196 (11th Cir.1998). In *Bullock*, the plaintiff alleged that he was denied equal access to training courses in general and that, specifically, in retaliation for the plaintiff's EEO complaints, one of the plaintiff's subordinates was selected to attend a certain course which provided training in management supervision skills. *Bullock*, 953 F.Supp. at 1466. The court

---

**7.** The court notes that Merriweather was required to sign the evaluation form in order to acknowledge that she had discussed it with her supervisor, not to acknowledge that she agreed with the evaluation. Creighton Aff., Attach. at p. 8.

**8.** Merriweather contends that she refused to sign the 1996 evaluation because the score was unfair and she thought it was a form of harassment or retaliation. Merriweather Dep. at p. 190. The court notes that it is baffled, as are Defendants, as to how such a score could be unfair or reflect any harassment or retaliation in consideration of the fact that Merriweather received identical scores of 28.2 on her evaluations in 1994, 1995, and 1996. Merriweather Dep. at p. 189, l. 6–p. 190, l. 14.

found that the plaintiff had failed to show that his non-selection for the training course was an adverse employment action because the plaintiff did not demonstrate that his non-selection affected the terms or conditions of his employment. *Id.* at 1473. In other words, the plaintiff did not show that not attending the training course "would affect his salary, chances of promotion, ability to perform his job, etc." *Id.* Therefore the court found that the plaintiff had failed to establish a prima facie case with regard to the training course. *Id.*

Applying *Bullock*'s analysis to the present case, Merriweather has similarly failed to demonstrate that her non-selection for the four training courses resulted in any adverse employment action. Merriweather has not carried her burden to show that her non-attendance at any of these courses affected or could affect her salary, chances of promotion, ability to perform her job, or any other aspect of her employment. The court therefore finds that Merriweather fails to state a prima facie case for racially disparate treatment in regard to the training classes because she has not proven the second element, that she has suffered an adverse employment action.

■ Even assuming that Merriweather had stated a claim for racially disparate treatment based on her non-selection for training courses, Defendants have provided legitimate business reasons for their selection of employees for special training courses. Defendants claim that class sizes were limited so that only one or two examiners from each district could attend, that the examiners who attended the courses were expected to convey what they had learned at the courses to the other examiners upon their return in order to train all employees as efficiently as possible, and that at least one class (stress management) was not even job-related. *See* Bingham Aff. at pp. 1–3. As Defendants note, Merriweather makes no attempt to show that Defendants' proffered business reasons for their selection procedures and training methods are pretext for discrimination. In the absence of any evidence to support that Defendants' actions were discriminatory, Merriweather's racially disparate treatment claim, insofar as it is based upon her non-selection for special

training courses, cannot survive Defendants' Motion for Summary Judgment.

In sum, Defendants' Motion for Summary Judgment is due to be granted to Defendants as to all of Merriweather's disparate treatment claims. Furthermore, since Merriweather has not established that Defendants subjected her to intentional discrimination on the basis of race, Merriweather has also failed to show that the Defendants deprived her of equal protection under the United States Constitution. Therefore, Merriweather cannot establish a § 1983 claim, and Defendants are entitled to Summary Judgment in their favor as to her equal protection claim.

**B. Hostile Work Environment Race Discrimination (Count III)**

■ Title VII makes it illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). This statute prohibits an employer from maintaining a hostile work environment based on the same protected classes. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Bivins v. Jeffers Vet Supply*, 873 F.Supp. 1500, 1507 (M.D.Ala.1994), *aff'd*, 58 F.3d 640 (11th Cir. 1995). A hostile work environment is created "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris*, 510 U.S. at 21, 114 S.Ct. 367. When examining whether alleged conduct created a hostile environment, the court must look to the totality of the circumstances. *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982).

To establish a prima facie case of hostile working environment, a plaintiff must establish that (1) he is a member of a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affects a term, condition, or privilege of employment; and (5) respondeat superior. *Bivins*, 873 F.Supp.

at 1507; *Henson,* 682 F.2d at 903–05. Defendants do not dispute that Merriweather, a black woman, is a member of a protected group. Defendants, however, contend that they are entitled to summary judgment on the grounds that Merriweather has failed to establish all of the other elements: that unwelcome harassment occurred, that any such harassment was based on race, that any such harassment affected a term, condition, or privilege of employment, and /or the fifth element, respondeat superior.[9]

As a basis for her hostile environment claim, Merriweather relies upon the allegations of harassment underlying her disparate treatment claims as evidence of the second element, that unwelcome harassment actually occurred. The court examined each allegation separately in section A. above and found that Merriweather could not state a prima facie case of racial harassment based upon disparate treatment. Furthermore, Merriweather has not produced any evidence that she experienced any racially discriminatory intimidation, ridicule, or insult at her workplace. Under these circumstances, Merriweather has also failed to carry her burden to show that unwelcome harassment occurred and cannot state a prima facie case of hostile environment racial discrimination.

■■■■■■ Even if Merriweather had produced evidence that harassment had occurred, in order to be actionable as racial harassment under Title VII, Merriweather must also show that the harassment was sufficiently severe and pervasive so as to alter the conditions of employment and create an abusive working environment. *Harris v. Forklift Sys.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In determining whether the nature of the harassment is severe and pervasive, courts must examine the totality of the circumstances. *Id.* at 23, 114 S.Ct. 367. This inquiry includes, but is not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

■■■■■■ This fourth element contains both subjective and objective components. To be actionable, the conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment— an environment that a reasonable person would find hostile or abusive," and that the victim must "subjectively perceive the environment to be abusive." *Id.* While Merriweather may subjectively perceive her work environment to be abusive, she has produced no evidence to support that a reasonable person would find her work environment to be objectively hostile or abusive. Examining the totality of the circumstances here, in the light most favorable to Merriweather, this court concludes that Merriweather cannot establish the fourth element of her prima facie case. Merriweather has not alleged that she has suffered any physical threats or humiliation as a result of any of the Defendants' conduct. Nor has she claimed that any alleged harassment unreasonably interfered with her work performance. The complained of conduct must be persistent and routine rather than isolated or sporadic in nature in order to be sufficiently severe and pervasive to alter the conditions of employment. *Carter v. Barnett Bank of Manatee County,* 1997 WL 724414 (M.D.Fla.1997) (citing *Baskerville v. Culligan Intern'l Co.,* 50 F.3d 428 (7th Cir.1995)). The court finds that the evidence does not establish that any alleged harassment Merriweather has suffered objectively affects a term, condition, or privilege of employment.

Because Merriweather fails to establish both the second and fourth elements of a prima facie case of racial harassment, Defendants' motion for Summary Judgment is due to be granted as to the hostile environment claim.

9. Defendants contend that a recent U.S. Supreme Court sexual harassment case, which recognized an affirmative defense that the employer exercised reasonable care to prevent and correct racially harassing behavior and that the plaintiff unreasonably failed to take advantage of these corrective measures, should apply to the respon-

deat superior element in the present racial harassment case. *See Faragher v. City of Boca Raton,* —— U.S. ——, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Defendants, however, have not amended their Complaint to include this affirmative defense, and this court declines to address the issue.

## C. Retaliation

### 1. *Title VII Retaliation* (Counts II and VII)

Title VII provides protection against retaliation for those who oppose discrimination or participate in Title VII processes.[10] Claims of retaliation which are based on circumstantial evidence, like Merriweather's claims, follow the traditional *McDonnell Douglas* tripartite framework of shifting burdens of proof. *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir.1994). A plaintiff bringing a retaliation claim must establish a prima facie case by showing that (1) she engaged in statutorily protected expression, (2) there was subsequently an adverse employment action, and (3) there is a causal link between the protected expression and the adverse action. *Meeks*, 15 F.3d at 1021. The causal link requirement has been interpreted broadly to require the plaintiff merely to prove that protected activity and the adverse employment action are "not completely unrelated." *Id.* Once the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If this burden is satisfied, the plaintiff must then show that the employer's proffered reason is a pretext for retaliation. *Id.*

Merriweather testified in March of 1995 on behalf of Sara Smelley, a co-worker, during the litigation of Smelley's disability discrimination claim against Defendants. Merriweather Dep. at p. 155, ll. 5–13. Merriweather also made several of her own complaints, including filing her own EEOC charges, concerning what she perceived to be the discriminatory promotion of Watson in March of 1996. Merriweather Dep. at p. 182, ll. 2–14; p. 190, ll. 15–17. Subsequent to Smelley's trial in March of 1995 and Merriweather's lodging of her own complaints in 1996, Merriweather claims that the Defendants were angry with her and retaliated against her. The court notes, as Defendants concede, that Merriweather's testimony and EEOC complaints are statutorily protected expression.

Merriweather contends that Defendants retaliated against her for this statutorily protected expression with three subsequent, adverse employment actions and that there is a causal link between the protected expression and the adverse action. First, Merriweather complains that she received negative job evaluations in 1996, 1997, and 1998. Merriweather Dep. at p. 188, ll. 10–15. Second, Merriweather complains that she received a written counseling statement on November 6, 1996 for conduct she did not commit. Third, Merriweather complains that she was not allowed to work in offices in outlying counties.[11]

Defendants contend that Merriweather has failed to establish a prima facie case of Title VII retaliation. Defendants contest both the second and third elements of Merriweather's prima facie case, contending that Merriweather suffered no adverse employment action, and that, even if adverse employment action were established, Merriweather could not establish a causal link between the protected expression and any adverse employment action.

The court first focuses upon whether Merriweather suffered adverse employment action, that is, whether terms or conditions of employment have been affected. Courts

---

10. The express statutory language prohibiting retaliation provides:

 It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

 42 U.S.C. § 2000e–3.

11. The court notes that Merriweather appears to rely on the four allegations made in support of her failure to promote, disparate treatment and hostile environment claims as additional evidence of retaliatory actions of DPS in response to Merriweather's protected expression under Title VII. Plaintiff's Brief at 13. However, Merriweather has failed to explain these contentions in her brief. Under the analysis completed in sections A. and B. above, the court finds that none of these incidents rises to the level of an adverse employment action, and even if Merriweather could establish that any of these four allegations rose to the level of adverse employment action, Merriweather could not establish a causal link between the protected expression and any such adverse employment action.

agree that "even under a liberal reading of adverse employment activity, · an employee must ultimately show some employment injury." *See Nelson v. University of Maine System*, 923 F.Supp. 275, 281 (D.Maine 1996). In other words, an employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it. *Perryman v. West*, 949 F.Supp. 815, 819 (M.D.Ala.1996); *see also Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448–49 (11th Cir.1998) (expressly adopting an objective test to evaluate allegations of "adverse employment actions" for ADA claims).

▋ The employment injury said to be caused by an adverse employment action does not, however, have to be immediate economic injury. Some courts addressing the issue of retaliation have identified a "range of acts as adverse, based upon the scope of their consequences." *Boyd v. Brookstone Corp. of New Hampshire*, 857 F.Supp. 1568, 1572 (S.D.Fla.1994). A term or condition of employment may be said to have been affected if there is a "demonstrable adverse impact on future employment opportunities or performances." *Fortner v. State of Kansas*, 934 F.Supp. 1252, 1266 (D.Kan.1996), *aff'd*, *Fortner v. Rueger*, 122 F.3d 40 (10th Cir.1997). In this context, the court analyzes each of Merriweather's three allegations of adverse employment action separately below.

a. *Negative job evaluations*

▋ Merriweather contends that she received negative job evaluations in 1996, 1997 and 1998 as retaliation for both Merriweather's participation in the Smelley trial in March of 1995 and Merriweather's filing of her own EEOC complaints in 1996. The court notes that Merriweather's employee performance appraisal scores were reported by her supervisors as follows for the years 1994 through 1998:

 1994—28.2 ("Exceeds Standards," range 25.0 to 34.4),
 1995—28.2
 1996—28.2
 1997—27.2
 1998—24.5 ("Meets Standards," range 15.0 to 24.9).

*See* Ogletree Aff. and Attach. at pp. 9 and 14; Plaintiff's Brief, Attach. 1.

First, the court finds it questionable whether any of Merriweather's three employee performance appraisal scores are in fact negative. Without doubt, Merriweather's 1996 score of 28.2, which was identical to her 1994 and 1995 scores, is not negative. Whether the 1997 and /or 1998 evaluation scores are negative is open to some debate. In 1997, Merriweather's score dropped by one point, from 28.2 to 27.2, but it remained within the "Exceeds Expectations" range of scores. In 1998, Merriweather's score dropped by another 2.7 points to 24.5, into the high end of the "Meets Expectations" range of scores.

In *Montandon v. Farmland Indus., Inc.*, the Eighth Circuit found that the plaintiff had not established that an evaluation score was in fact negative. 116 F.3d 355, 359 (8th Cir.1997). The score at issue, based on new and expanded evaluation categories, was some thirty points lower than the plaintiff's score in the previous year, but the score merited a "meets expectations" score. *Id.* Moreover, since the evaluation was never used as the basis for any action against the plaintiff, the court found that the evaluation could not fairly be considered an adverse employment action. *Id.; see also Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir.1994) ("meets expectations" score on a new scale, lower than previous evaluations, fails to establish adverse employment action absent evidence showing that such score is in fact negative).

While Merriweather's evaluation scores are not complicated by a new scale, this court finds that the preceding authority supports that lower employee evaluation scores which still meet the employer's expectations for employee performance and are not used as the basis for any employment detriment are not "adverse employment action" within the meaning of that element of a plaintiff's prima facie case of Title VII retaliation. Applying this rule, since Merriweather's lowest score fell within the high end of her employer's "meets expectations" range of scores and no adverse employment consequences resulted from or were based on these evaluation

scores, Merriweather's 1997 and 1998 employee performance appraisal scores could not be established as negative.

While this court has not found any case in which the Eleventh Circuit has addressed the issue of whether negative performance ratings alone can qualify as an adverse employment action, the Seventh Circuit has noted that "[t]here is little support for the argument that negative performance evaluations alone can constitute an adverse employment action." *Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir.1996). Certainly unfair, negative employment ratings which are the basis for and coupled with adverse employment actions such as removal of job responsibilities, demotion, transfer, or termination of employment are sufficient to satisfy the "adverse employment action" prong of the plaintiff's prima facie case of retaliation. *See id.* (discussing cases). Additionally, one district court has found that a mid-year performance evaluation on which the plaintiff received an "unacceptable" rating did not constitute an adverse employment action because it did not affect the terms, privileges, duration, or condition of the plaintiff's employment. *Johnson v. Frank*, 828 F.Supp. 1143, 1153 (S.D.N.Y.1993).

In the present case, Merriweather has not even alleged that her putatively negative employee performance appraisal scores have been used (or even could be used in the future) as the basis for in any negative employment consequences. Nor has Merriweather shown that these employee performance appraisal scores were in fact negative. This court therefore finds that Merriweather has not established that her employee performance appraisal scores constituted adverse employment action and cannot establish a prima facie case of Title VII retaliation based on these employee performance appraisal scores.

b. *Written counseling*

■ Merriweather complains that she received a written counseling statement on November 6, 1996 for conduct she did not commit [12] in retaliation for both Merriweather's participation in the Smelley trial in March of 1995 and Merriweather's filing of her own EEOC complaints in 1996. Defendants contest whether such counseling rose to the level of adverse employment action and whether Merriweather can establish a causal connection between her exercise of protected speech and the counseling.

Courts in the Eleventh Circuit have divided over whether a written counseling constitutes an adverse employment action for the purposes of a Title VII retaliation claim. One court found that a written *reprimand* which threatened termination qualified as an adverse employment action despite its later removal from the plaintiff's personnel file. *Fowler v. Sunrise Carpet Indus., Inc.*, 911 F.Supp. 1560, 1583 (N.D.Ga.1996). On the other hand, another court found that a non-threatening written reprimand which is later removed from the employee's personnel file was not an adverse employment action. *Coney v. Dep't of Human Resources of Georgia*, 787 F.Supp. 1434 (M.D.Ga.1992).

In the present case, Defendants appear to contend that the written counseling did not amount to even a non-threatening written reprimand. Defendants contend that a warning or counseling is the lowest grade of discipline in the State system, does not subtract points from an employee's evaluation, does not affect an employee's salary, and is not punitive. Merriweather has not alleged that this written counseling has had any adverse impact on her employment. She has not produced any evidence to support that she has been fired, demoted or denied any pay increase because of the counseling. Nor have any of the terms of her employment been adversely affected because of the counseling. This court therefore finds that the written counseling does not constitute adverse employment action, and that Merriweather has failed to state a prima facie case of retaliation based upon the written counseling.

■ Even assuming that the written counseling constituted adverse employment action, Merriweather cannot establish a causal connection between her testimony and

---

12. The court understands Merriweather's contention here to be that she did not know that

drivers license applicants were waiting for assistance while she was away from her work station.

complaints and the written counseling. As noted above, the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks*, 15 F.3d at 1021. There is insufficient evidence to support that Merriweather's protected activity and subsequent written counseling were at all related. No evidence, other than the order of occurrence, links these events, and Merriweather also fails to establish the causation element of her prima facie case.

Even if Merriweather had established a prima facie case of retaliation, Defendants have articulated a legitimate, nondiscriminatory reason for the employer's actions. Defendants assert that Merriweather received the written counseling from a black supervisor because she was away from her assigned work station, talking with a state trooper in the "bull room," while numerous drivers license applicants were waiting for assistance. An employer certainly has the right to discipline an employee for being absent from her assigned work station. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir.1997) (finding that plaintiff's reprimand for not being at the assigned work station was not actionable), *cert. denied*, — U.S. —, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997).

Merriweather did not address Defendants' articulated reason for the written counseling at all in her Brief in Opposition to Summary Judgment. Instead, Merriweather simply alleges that the written counseling was in retaliation for her prior testimony and complaints. A "plaintiff's allegations, opinions, and conclusory statements are insufficient to create an issue of fact as to show intent to discriminate." *Blount v. Alabama Cooperative Extension Service*, 869 F.Supp. 1543, 1553 (M.D.Ala.1994). Because Merriweather has also failed to sustain her burden of proof to show that the employer's articulated reason for the written counseling was pretextual, she has failed to establish retaliation.

### c. *Work in outlying counties*

Merriweather alleges that in retaliation for both Merriweather's participation in the Smelley trial in March of 1995 and Merriweather's filing of her own EEOC complaints in 1996, her supervisor refused to allow her to work in outlying county offices after October 16, 1996.

The court notes that job transfers which result in loss of pay, benefits, or classification, or change of duties can qualify as "adverse employment action." *Cf. Preda v. Nissho Iwai American Corp.*, 128 F.3d 789 (2d Cir.1997) (discriminatorily-motivated diminution of duties can be adverse employment action); *Smith v. Upson County, Ga.*, 859 F.Supp. 1504, 1510 (M.D.Ga.1994) (finding no adverse employment action as a result of the plaintiff's transfer because the plaintiff suffered no loss in pay, benefits, or classification), *aff'd*, 56 F.3d 1392 (11th Cir.1995). In Merriweather's case, however, the only damage to her employment alleged to have resulted from the refusal to allow Merriweather to work in outlying counties was explained by Merriweather at her Deposition as follows:

Q. Okay. Could you tell me, please, ma'am, how you've been damaged in your employment by not working in outlying counties?

A. When you're working in the Tuscaloosa office, that office is busy, and working in the outlying counties will give you—even though a lot of times they're busy over there, but it will give you—it's sort of like a—it's not as busy as the Tuscaloosa office is.

Q. You just don't have to work as hard?

A. You have to work, but it gives you a break from the Tuscaloosa office, the main office.

Merriweather Dep. at p. 211, ll. 7–18.

Merriweather has alleged no loss of pay, benefits, job classification, or change of duties as a result of this alleged retaliation. Considering this evidence in the light most favorable to the plaintiff, this court finds that the evidence is insufficient to support the contention that Defendants' refusal to allow Merriweather to work in outlying counties constituted an adverse employment action.

Even if Merriweather had shown an adverse employment action regarding the outlying counties issue, Merriweather fails to establish a connection between her protected

activity and the adverse employment action in order to establish a prima facie case of retaliation. The standard for fulfillment of the causal connection requirement of a prima facie case of retaliation is interpreted broadly so that the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks,* 15 F.3d at 1021.

 Defendants allege, and Merriweather does not deny, that the supervisor who restricted Merriweather to the Tuscaloosa County office had no knowledge of Merriweather's testimony or EEOC complaints. *See* Creighton Aff. at p. 3. Furthermore, this black supervisor did not work in the Tuscaloosa office or know Merriweather until April of 1996. *Id.* "[A]n employer cannot be guilty of retaliation for an employee's opposition to discrimination unless he is aware of that opposition." *Corley v. Jackson Police Dep't,* 639 F.2d 1296, 1300 (5th Cir.1981).

Even though the standard for establishing the causation element is slight, in the instant case, where there is no evidence that Merriweather's supervisor even knew about Merriweather's protected activity, there is insufficient evidence to support that Merriweather's protected activity and restriction to the Tuscaloosa office were at all related. Thus, Merriweather has also failed to satisfy the causation element of her prima facie case of retaliation in regard to her restriction to Tuscaloosa County.[13]

Even after an examination of all of Merriweather's evidence of retaliation collectively and in the light most favorable to her, this court finds that it does not rise to the threshold level of substantiality that must be met for unlawful discrimination to be cognizable under Title VII's anti-retaliation clause. For this reason, Merriweather's Title VII retaliation claim cannot survive Defendants' Motion for Summary Judgment.

## 2. *Free Speech /First Amendment* (Count VI)

Merriweather has also asserted that the Defendants violated her First Amendment right to freedom of speech. A claim by a public employee that he was punished for exercising his right to freedom of speech requires the court to conduct a four part inquiry. *See Bryson v. City of Waycross,* 888 F.2d 1562, 1565–66 (11th Cir.1989). First, the court must determine whether the alleged speech implicated a matter of public concern. *Watkins v. Bowden,* 105 F.3d 1344 (11th Cir.1997). If so, the court must weigh the employee's First Amendment interest against the interest of the public employer. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (the court must balance "an employee's interest as a citizen in commenting on matters of public concern ... against the state's interest as an employer 'in promoting the efficiency of the public services it performs through its employees.' "); *Watkins,* 105 F.3d at 1352. If the employee prevails on the balancing test, the fact-finder determines whether employee's speech was a substantial motivating factor in the employment decision. *Id.* Then, in order to prevail, the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. *Id.*

Merriweather alleges that her protected speech under the First Amendment includes the same two events which form the basis for her Title VII claim: Merriweather's testimony in March of 1995 at Sara Smelley's trial regarding a disability discrimination claim against DPS and Merriweather's own complaints, including her EEOC charges, concerning what she perceived to be the discriminatory promotion of Watson in March of 1996. Merriweather Dep. at p. 155, ll. 5–13; p. 182, ll. 2–14; p. 190, ll. 15–17.

13. The court also notes that Defendants proffered a legitimate, non-discriminatory reason for Merriweather's restriction to Tuscaloosa, asserting that Merriweather was not assigned to work in outlying counties because she did not work well in an unsupervised setting and because management wanted to cut back on the number of examiners working in outlying counties while giving experience to other examiners who had little or no experience in the outlying counties. *See* Creighton Aff. at pp. 2–3. Merriweather has not shown that these reasons were a pretext for discrimination.

■ This court first addresses whether this speech can be "fairly characterized as constituting speech on a matter of public concern," so that it is entitled to protection under the First Amendment. *Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir.1998). The Eleventh Circuit has held that an employee's federal court testimony in support of another plaintiff co-worker's discrimination suit constitutes speech on a matter of public concern and merits First Amendment protection. *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1539–40 (11th Cir. 1994). Under this clear and binding precedent, Merriweather's testimony at Smelley's discrimination trial against DPS clearly constituted speech on a matter of public concern.

■ Whether Merriweather's own EEOC complaints constitute speech on a matter of public concern is more difficult to determine. In determining whether an employee's speech addresses a matter of public concern, the court must look to the content, form and context of the employee's speech. *Bryson v. City of Waycross*, 888 F.2d 1562 (11th Cir.1989). The Eleventh Circuit has not expressly determined whether EEOC discrimination charges and federal court discrimination complaints which seek redress only for a plaintiff's personal injuries constitute speech on a matter of public concern. *See Badia v. City of Miami*, 133 F.3d 1443 (11th Cir.1998). The circuits which have directly addressed whether such matters constitute speech on a matter of public concern have split on the issue. The Eighth Circuit has held that the "filing of an EEOC charge and a civil rights lawsuit are activities protected by the first amendment." *Greenwood v. Ross*, 778 F.2d 448, 457 (8th Cir.1985). In contrast, the Seventh Circuit expressly rejected *Greenwood*'s per se rule and evaluates each EEOC charge and civil rights lawsuit on a case-by-case basis. *See Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 420 (7th Cir.1988). The Sixth Circuit has held that a plaintiff's EEO charge was not entitled to First Amendment protection because it related only to a personal employment dispute. *Rice v. Ohio Dep't of Transp.*, 887 F.2d 716, 720–21 (6th Cir.1989), *vac'd on other grounds*, 497 U.S. 1001, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990).

The Eleventh Circuit has held that "no First Amendment protection attaches to speech that—for personal benefit—exposes personally suffered harassment or discrimination." *Tindal v. Montgomery County Comm'n*, 32 F.3d 1535, 1539 (11th Cir.1994). Thus, this court applies that guidance in evaluating whether Merriweather's filing of EEO charges against DPS for alleged racial harassment is protected speech under the First Amendment. Merriweather's EEOC charges complain of and seek damages for racial harassment which Merriweather claims she personally endured. *See* Ogletree Aff. at Attach. pp. 1–5. Merriweather does not complain of workplace racial harassment which affects any DPS employee but herself. Therefore, under the rule in *Tindal*, this court finds that Merriweather's filing of EEOC charges of racial harassment is a matter of personal, not public, concern and is not entitled to First Amendment protection.[14]

The analysis must continue in regard to Merriweather's testimony against DPS at her co-worker's discrimination lawsuit, which has been established as protected speech under the First Amendment. The next step is to weigh the employee's First Amendment interest against the interest of the employer. *Watkins v. Bowden*, 105 F.3d 1344, 1352 (11th Cir.1997). Allowing employees like Merriweather to testify about discrimination against a co-worker by a state employer serves the public interest of eliminating unfair discrimination from the workplace. On the other side of the scales, DPS has not alleged that Merriweather's testimony interfered in any way with the "efficiency of the public services it performs through its employees." *See id.* Given these facts, the balance tips in Merriweather's favor.

■ Thus, the court moves on to the third step of the *Bryson* test in evaluating

---

**14.** The court notes that, although this finding alone is dispositive regarding Merriweather's EEOC charges, Merriweather has failed to produce evidence that would allow a reasonable trier of fact to conclude that any negative employment action occurred because of Merriweather's EEOC charges. Thus, Merriweather's EEOC charges cannot support a claim of First Amendment retaliation.

Merriweather's First Amendment retaliation claims. The factfinder must now determine whether the employee's speech played a substantial role in the challenged employment decisions. Merriweather claims that because of the exercise of her First Amendment rights, DPS retaliated against her with three unfair employment decisions: (1) negative job evaluations in 1996, 1997, and 1998; (2) a written counseling statement on November 6, 1996; and (3) a decision denying her permission to work in offices in outlying counties.[15]

 This third step in the First Amendment retaliation analysis assumes that a plaintiff has suffered an adverse employment decision (an "unfair employment decision"). While the Eleventh Circuit has not directly addressed this underlying assumption, at least two other circuits have held that an adverse employment action is a prerequisite to a First Amendment retaliation claim. For example, before even reaching the public concern and balancing of interests elements of a First Amendment retaliation claim, the Ninth Circuit requires a plaintiff to show that he has suffered an adverse employment action. *Nunez v. City of Los Angeles,* 147 F.3d 867, 874 (9th Cir.1998). The Fifth Circuit, on the other hand, evaluates whether a plaintiff suffered an adverse employment action before moving on to examine the causation element of a First Amendment retaliation claim. *See Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997), *reh'g denied,* 122 F.3d 1068, *cert. denied,* — U.S. —, 118 S.Ct. 603, 139 L.Ed.2d 491. This analysis, while not expressly stated by the Eleventh Circuit in *Bryson,* supplies the only logical interpretation of *Bryson's* unfair employment decision requirement of the causation element in a First Amendment retaliation claim. If there has been no unfair employment action, there has been no retaliation.

 This court thus evaluates whether any of Merriweather's contentions rise to the level of "adverse employment action" before allowing a factfinder to determine whether Merriweather's exercise of First Amendment rights played a substantial role in any alleged retaliation. " 'Adverse employment action' is broadly defined and as a matter of law includes not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." *Rogers v. Miller,* 57 F.3d 986, 992 (11th . Cir.1995). Merriweather, however, has not shown that she suffered any adverse employment action in the context of any of her claims. As discussed above in the context of her Title VII retaliation claim, Merriweather's putatively negative job evaluations in 1996, 1997 and 1998, her written counseling regarding the "bull" room incident, and her restriction to the Tuscaloosa County office do not constitute adverse employment action. This court therefore finds that Merriweather cannot state a claim for First Amendment retaliation since the employment decisions she challenges do not rise to the level of adverse employment actions.

 Even if Merriweather could show that she suffered any adverse employment action, she must present enough evidence for a reasonable jury to conclude that the protected speech was a substantial or motivating factor in the employer's decision in order to survive summary judgment. *Beckwith v. City of Daytona,* 58 F.3d 1554, 1564 (11th Cir.1995). "Where causation is lacking, an employee's claim of retaliatory discharge must fail and it is unnecessary to consider the other three elements." *Anderson–Free v. Steptoe,* 993 F.Supp. 870 (M.D.Ala.1997) (citations omitted). This court notes that, even viewing the record as a whole and in the light most favorable to Merriweather, no reasonable jury could conclude that any of these three incidents occurred in retaliation for

---

**15.** The court notes that Merriweather also appears to rely on the four allegations made in support of her disparate treatment and hostile environment claims as additional evidence of retaliatory actions of DPS in response to Merriweather's protected expression under the First Amendment. Plaintiff's Brief in Opposition to Summary Judgment at p. 13. Merriweather, however, has failed to explain these contentions in her brief. Under the analysis completed in sections A. and B. above, the court finds that no reasonable factfinder could find that Merriweather's exercise of her First Amendment rights was a substantial motivating factor these four incidents. In addition, none of these incidents rose to the level of an adverse employment action and therefore could not qualify as retaliation as discussed below.

Merriweather's protected First Amendment activity.

Summary judgment is due to be granted to Defendants as to Merriweather's First Amendment retaliation claims.

## V. *CONCLUSION*

For the reasons discussed above, Merriweather has failed to sustain her burdens of proof with regard to her Title VII and § 1983 claims. Therefore, Defendants' Motion for Summary Judgment is due to be GRANTED.